Douglas E. OTT, M.D., Plaintiff,

v.

ST. LUKE HOSPITAL OF CAMPBELL COUNTY, INC., Defendant.

Civ. A. No. 80–138.

United States District Court,
E. D. Kentucky,
Covington Division.

Sept. 23, 1981.

Kurt A. Philipps, Covington, Ky., for plaintiff.

John E. Lange, III, Newport, Ky., Frederick Brockmeier, IV, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION

BERTELSMAN, District Judge.

This case requires this court to employ the broad policy-creating powers granted to it by Rule 501 of the Federal Rules of Evidence to determine whether a privilege for the deliberations of public hospital peer review committees, which determine doctors' applications for staff privileges, is desirable under "the principles of the common law as they may be interpreted . . . in the light of reason and experience."[1]

### Facts

The plaintiff, Douglas E. Ott, M.D., has filed this 42 U.S.C. § 1983 action against St. Luke Hospital of Campbell County, Kentucky, Inc., and certain individuals connected with that institution. Dr. Ott claims that he was not afforded procedural and substantive due process in the hospital's denial of his application for staff privileges.[2] He contends that several peer review committee meetings were held without giving him notice or the opportunity to be heard and that constitutionally improper considerations and ulterior motives were employed in the decision to deny him the requested privileges. Among these, the plaintiff asserts, are that the members of the committees denied him privileges to further their own competitive concerns, and also were improperly motivated by the fact that while exercising temporary privileges he had voiced criticisms of the qualifications of members of the hospital staff.

Plaintiff filed interrogatories and scheduled depositions designed to effect discovery of the proceedings of the various committees which played a part in the denial of his application for staff privileges. In particular, he desires to know the reasons given at the committee meetings for such denial and the source and nature of any derogatory information concerning him that the committees had before them.

The hospital moves for a protective order on the ground that the proceedings of the committees involved in the decision complained of are privileged.

### Rule 501 of the Federal Rules of Evidence

The Advisory Committee which originally drafted the Federal Rules of Evidence proposed nine specific privileges to be made applicable in actions in federal courts.[3] The

---

1. Rule 501, Federal Rules of Evidence reads:
   "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

2. Dr. Ott had temporary staff privileges and claims that by reason of the regulations, customs and usages of the hospital, he had a sufficient property right to entitle him to due process. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

3. The privileges recommended by the Advisory Committee were:
   1) Required reports privileged by statute.
   2) Lawyer-client privilege.
   3) Psychotherapist-patient privilege.
   4) Husband-wife privilege.
   5) Communications to clergymen.
   6) Political vote.
   7) Trade secrets.
   8) Secrets of State and other official information.
   9) Identity of informer.
   The proposed privilege most applicable to the instant case was that for official information,

Advisory Committee's recommendations were accepted by the Supreme Court and referred to Congress. However, so many objections to the various proposed rules were made before Congress that these rules were rejected in their entirety in favor of the general rule finally adopted.[4]

Thus, "the Federal Rules of Evidence acknowledge the authority of the federal courts to continue the evolutionary development of testimonial privileges."[5] Further,

"In rejecting the proposed rules and enacting Rule 501, Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.' 120 Cong.Rec. 40891 (1974) (statement of Rep. Hungate), and to leave the door open to change."[6]

■ Therefore, this court has the mandate to decide whether the privilege claimed by the hospital in this case should be recognized as a matter of good judicial policy. The proper task for this court in this case is to analyze the purpose and the

force of the particular federal interest involved and balance it against the rationale and comparative strength underlying the particular evidentiary privilege claimed so as to determine which, in the interest of ultimate justice, on the particular facts presented should predominate.[7]

There are strong conflicting values both for and against the recognition of the privilege. Nevertheless, the court holds that the considerations favoring the privilege are outweighed by the factors militating against it and that the deliberation of the peer review committees of the defendant hospital are subject to discovery by the plaintiff.

### The Privilege Claimed Herein Must be Denied

Although we are not bound by state law in this federal question case, it is appropriate to consider state law to see if it should be applied by analogy or as a matter of comity.[8] The privilege claimed by the hos-

---

as it appeared in proposed Rule 509, as follows:

"(a) Definitions

\* \* \* \* \* \*

"(2) Official information.—'Official information' is information within the custody or control of a department or agency of the government the disclosure of which is shown to be contrary to the public interest and which consists of: (A) intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policymaking functions, or (B) subject to the provisions of 18 U.S.C. § 3500, investigatory files compiled for law enforcement purposes and not otherwise available, or (C) information within the custody or control of a governmental department or agency whether initiated within the department or agency or acquired by it in its exercise of its official responsibilities and not otherwise available to the public pursuant to 5 U.S.C. § 552.

(b) General rule of privilege.—The government has a privilege to refuse to give evidence and to prevent any person from giving evidence upon a showing of reasonable likelihood of danger that the evidence will disclose a secret of state or official information, as defined in this rule."

4. A discussion of the various objections adduced to the specific proposals and the legisla-

tive history of their rejection, may be found in 2 Weinstein and Berger, Weinstein's Evidence § 501 *et seq.*; Saltzburg & Redden, Federal Rules of Evidence Manual at 198–222; 2 Louisell and Mueller, Federal Evidence § 200, *et seq.*; Krattenmaker, *Inter-Personal Testimonial Privileges under the Federal Rules of Evidence: A Suggested Approach*, 64 Geo.L.J. 613 (1976). Kaminsky, *State Evidentiary Privileges in Federal Civil Litigation*, 43 Fordham L.Rev. 923 (1975).

5. *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1981).

6. *Id.*

7. See *Baker v. F&F Investment Co.*, 470 F.2d 778 (2d Cir. 1972), cert. den. 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Robinson v. Magovern*, 83 F.R.D. 79 (W.D.Pa.1979); *Lora v. City of New York Board of Education*, 74 F.R.D. 565 (E.D.N.Y.1977); *United States v. King*, 73 F.R.D. 103 (E.D.N.Y.1976); *Baylor v. Mading—Dugan Drug Co.*, 57 F.R.D. 509 (N.D. Ill.1972). See also Kaminsky, *State Evidentiary Privileges in Federal Civil Litigation*, 43 Fordham L.Rev. 923 (1975).

8. *Robinson v. Magovern*, 83 F.R.D. 79 (W.D.Pa. 1979).

pital in this case is recognized by a Kentucky statute.[9]

The hospital strenuously argues that the policy considerations reflected in the state statute, apparently primarily for the purpose of malpractice cases, are equally forceful in this civil rights action. Unless the confidentiality of the proceedings of peer review committees can be maintained, the hospital contends, there will be a chilling effect on the important prophylactic role of such committees. If adverse comments concerning an applicant for staff privileges made at a committee meeting, or made by those with whom the applicant has previously been associated, can be discovered in litigation, there will be a reluctance on the part of those from whom opinions are sought to express their frank views, for fear of being involved in litigation, or merely from the fact that they may have to associate with the applicant in their daily work or other aspects of their lives. If such chilling effect occurs, the hospital's argument runs, the ability of the medical profession to assure that all of its practitioners are of the highest quality may be impaired

**9.** KRS 311.377 reads: **"Waiver of claim for damages by applicant for or grantee of staff privileges—Records confidential—Exceptions.**

"(1) Any person who applies for, or is granted staff privileges after June 17, 1978, by any health services organization subject to licensing under the certificate of need and licensure provisions of KRS Chapter 216B, shall be deemed to have waived as a condition of such application or grant, any claim for damages for any good faith action taken by any person who is a member, participant in or employe of or who furnishes professional counsel or services to any committee, board, commission, or other entity which is duly constituted by any licensed hospital, medical society, or association affiliated with the American Medical Association, American Podiatry Association, American Dental Association, American Osteopathic Association or the American Hospital Association, or a medical care foundation affiliated with such a medical society or association, or governmental or quasi-governmental agency designated to review and evaluate the health care acts of other health care personnel. This subsection shall have equal application to, and the waiver be effective for, those persons who, subsequent to June 17, 1978, continue to exercise staff privileges previously granted by any such health services organization.

"(2) *The proceedings, records, opinions, conclusions and recommendations of any committee, board, commission, professional standards review organization, or other entity, as referred to in subsection (1) of this section shall be confidential and privileged and shall not be subject to discovery, subpoena, or introduction into evidence, in any civil action in any court or in any administrative proceeding before any board, body, or committee, whether federal, state, county, or city. This subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation.*

"(3) Nothing in subsection (2) of this section shall be construed to restrict or limit the right to discover or use in any civil action or other administrative proceeding any evidence, document or record which is subject to discovery independently of the proceedings of the committee, board, commission, professional standards review organization or other entity to which subsection (1) of this section refers.

"(4) No person who presents or offers evidence in proceedings described in subsection (2) of this section or who is a member of any committee, board, commission, professional standards review organization before which such evidence is presented or offered may refuse to testify in discovery or upon a trial or any civil action as to any evidence, document or record described in subsection (3) of this section or as to any information within his own knowledge except as provided in subsection (5) of this section.

"(5) *No person shall be permitted or compelled to testify concerning his testimony or the testimony of others except that of a defendant given in any proceeding referred to in subsection (2) of this section, or as to any of his opinions formed as a result of such proceeding.*

"(6) In any action in which the denial of staff privileges by any health care entity shall be in issue, agents, employes or other representatives of a health care entity may with the consent of such health care entity testify concerning any evidence presented in proceedings related to the entity's denial of such staff privileges.

"(7) Nothing in this section shall be construed to restrict or prevent the presentation of testimony, records, findings, recommendations, evaluations, opinions, or other actions of any committee, board, commission, professional standards review organization, or other entity described in subsection (1) of this section, in any statutory or administrative proceeding related to the functions or duties of any committee, board, commission, professional standards review organization, or other entity."

to the detriment of the public health, and individual patients may even suffer grievous injury or death, if incompetents cannot be excluded or removed from hospital staffs.

Some courts have held peer review committee deliberations to be privileged for reasons similar to those adduced by the hospital in the instant case.[10] The greater weight of authority, and the better reasoned authority, is for denying such privilege, however.

In *United States v. Nixon*,[11] the Supreme Court of the United States held that even the President of the United States may not claim on the basis of a general necessity for confidentiality a privilege for conversations taking place in his office, as against a need for disclosure in federal criminal proceedings. And in *United States v. Gillock*,[12] the Court held that in a federal criminal prosecution against a state legislator there is no legislative privilege concerning evidence of the legislative acts of the legislator and the motivation therefor, even though such a privilege was granted by state statute.

In *American Civil Liberties Union of Mississippi, Inc. v. Finch*,[13] the court refused to recognize a privilege granted by state statute for the deliberations of a defunct state agency known as the "Mississippi Sovereignty Commission," as against the claim of the plaintiff that the records of such Commission would disclose information supporting a claim of systematic and purposeful denial of First Amendment and other constitutional rights of citizens by harassment and surveillance of their lawful activities.

The court in *Finch* cited the opinion of Judge Weinstein in *Lora v. City of New York Board of Education*,[14] in which it was stated:

"Only strong countervailing public policies should be permitted to prevent disclosure when, as here, a suit is brought to redress a claim for violation of civil rights under the Constitution.[15]

The *Finch* court adopted the four factors first adduced by Wigmore for recognition of a testimonial privilege, namely:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

"(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation."[16]

■ This court agrees with and adopts this approach. Applying these four factors to the case at bar, we find that with regard to the first, the communication among the members of, and from outside sources to, the peer review committees did very probably originate with the understanding that they would not be disclosed. Similarly, the third factor would militate in favor of recognition of the privilege, because the relationship among the members of such com-

**10.** *McKillop v. Regents of the University of California,* 386 F.Supp. 1270 (N.D.Cal.1975). *Keyes v. Lenoir Rhyne College,* 552 F.2d 579 (4th Cir. 1977), cert. den. 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

**11.** 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

**12.** 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980).

**13.** 638 F.2d 1336 (5th Cir. 1981). This decision states "Privileges are strongly disfavored in federal practice." 638 F.2d at 1344. This strong statement may be considerably mitigat-

ed by the later decision of the Supreme Court of the United States in *Upjohn Co. v. United States,* —— U.S. ——, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), where strong policies favoring the attorney-client privilege at least, were enunciated.

**14.** 74 F.R.D. 565 (E.D.N.Y.1977).

**15.** 74 F.R.D. at 579.

**16.** 638 F.2d at 1344 (emphasis the court's). These factors were also employed in *In re Hampers,* 651 F.2d 19 (1st Cir. 1981).

mittees and their sources of information is one that ought to be fostered.

■ Factor No. 2, however, is speculative when applied to the hospital's claims. There is no real showing that the peer review committees' functions would be substantially impaired by denial of the privilege. Indeed, the true efficiency of such committees may be fostered by an atmosphere of openness, in that they may be less likely to rely on hearsay or information tainted by bias or prejudice in making their decisions, if the underlying reasons therefor can be required to be disclosed in a proper case. Although perhaps there is some merit in the hospital's contention that incompetent physicians may be more easily excluded or removed from staffs if the privilege is recognized, it may also be that a potential Pasteur, Lister or Semmelweis,[17] who advocates salutary changes in procedures may be excluded simply because he "makes waves," if the proceedings are shrouded from public perusal. It is also important to assure that the decisions of such peer review committees are not made on improper considerations such as those of race or sex.

It is the fourth factor that provides the *coup de grace* to the hospital's argument, however. For, even though some injury might inure to the functioning of the peer review committee by denying the privilege, plaintiff's ability to proceed with the litigation is totally thwarted by granting it. The benefit gained for the correct disposal of litigation by denying the privilege is overwhelming, because this court's ability to evaluate plaintiff's constitutional claims would be totally negated if the privilege is recognized. Similar considerations have persuaded federal courts to refuse to recognize similar claims of privilege under a variety of circumstances.[18]

### Conclusion

The Constitution and statutes of the United States, as interpreted by the Supreme Court of the United States, charge this court with the responsibility to review the constitutionality of many personnel actions concerning public employees.[19] As long as this is true, the court cannot permit the discharge of its responsibility to conduct a search for the truth with regard to these matters to be thwarted by rules of privilege in the absence of "strong countervailing public policies."[20] For reasons stated above, such countervailing considerations

---

17. Louis Pasteur. French chemist and microbiologist who proved that micro-organisms cause fermentation and disease. He also developed vaccines for rabies, anthrax and chicken cholera, but is best known for his development of the pasteurization process, destruction of harmful germs by heat. He received strong opposition from contemporary medical circles in reference to some of his novel theories. 13 Encyclopaedia Brittannica 1066 (15th Ed. 1974).

Joseph Lister. British surgeon and scientist who pioneered the use of chemicals to prevent surgical infections. Although Lister lived to see universal acceptance of his principle, his "germ theory" was initially misunderstood and opposed in England and the U.S. 10 Encyclopaedia Brittannica 1033 (15th Ed. 1974).

Philipp Semmelweis. Hungarian physician and scientist who discovered the cause of child bed fever and reduced its incidence by ordering his students to wash their hands in a solution of chlorinated lime before examinations. His superior however was critical of the novel theory and technique. 16 Encyclopaedia Brittannica 529 (15th Ed. 1974).

18. *Robinson v. Magovern*, 83 F.R.D. 79 (W.D. Pa.1979) (privilege similar to that claimed here-

in denied in antitrust litigation); *see also Feminist Women's Health Center, Inc. v. Mohammad, M.D.*, 586 F.2d 530 (5th Cir. 1978), cert. den. 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979) (privilege for medical review committee records held inapplicable in trial of federal cause of action); *Crawford v. Dominic*, 469 F.Supp. 260 (E.D.Pa.1979) (civil rights police brutality action, investigative reports and supervisor's evaluations of police department denied privilege); *United States v. King*, 73 F.R.D. 103 (E.D.N.Y.1976) (claim of privilege for income tax return of defendant in criminal action denied). Cf. *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518 (E.D.Tenn.1977) (internal investigation of aircraft accident).

19. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann*, 488 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

20. *Lora v. City of New York Board of Education*, 74 F.R.D. at 579.

are insufficient for the recognition of a claim of privilege in the case at bar.

Therefore, the motion for a protective order must be denied. Order accordingly.