Florence N. SCHAFER, Plaintiff,

v.

**PARKVIEW MEMORIAL HOSPITAL, INC., Defendant.**

Civ. No. F 83–166.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 23, 1984.

Ernest M. Beal, Jr., Parrish, Knight & Beal, Fort Wayne, Ind., for plaintiff.

Richard H. Blaich, Martin T. Fletcher, T. Russell Strunk, Jr., Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for defendant.

## ORDER

LEE, District Judge.

This matter is before the court on plaintiff's January 30, 1984, and February 8, 1984, "Motions to Compel Discovery." More specifically, the matters addressed in this order are plaintiff's request that several employees of defendant Parkview Memorial Hospital answer deposition questions, in writing, which were objected to by defendant and plaintiff's request that defendant produce the minutes of a psychiatric review committee. Defendant objected to both the questions and the request for production on the grounds that the same were privileged by virtue of Indiana's "peer review statute."

On February 29, 1983, defendant filed a "Memorandum Concerning the Peer Review Statute." Plaintiff, on March 7, 1984, filed a document entitled "Points and Authorities in Support of the Motions to Compel Discovery" which addressed, among other things, the protections of, and applicability of, the peer review statute. The next day, March 8, 1984, both parties presented arguments to the court. Considering the briefs on the issue and the arguments relating thereto, the court will grant plaintiff's request subject to the provisions contained in this order.

### Factual Background and Procedural Posture

This is an Age Discrimination in Employment Act (hereinafter A.D.E.A.) case brought pursuant to 29 U.S.C. § 621 *et seq.* alleging discrimination on the basis of age. Plaintiff also alleged a pendent state law claim which this court dismissed by order of September 15, 1983.

Simply put, plaintiff alleges that defendant Parkview Memorial Hospital discharged her from her employment as Administrative Director of the hospital's "south unit" because of her age. Defendant, of course, asserts that age had nothing to do with plaintiff leaving the hospital and instead asserts that plaintiff left either voluntarily or for reasons other than those relating to age.

From the record, it appears that while employed at the hospital, plaintiff attended one or more meetings of a "psychiatric committee." That committee apparently performs several functions for the hospital, among which is service as a "peer review" committee. During the course of one of the meetings of the psychiatric committee, discussions were had relating to the implementation of a "wellness program" for the south unit. It appears that plaintiff did not take kindly to the suggestions about the implementation of the program because she had allegedly not been apprised of the program in advance. Plaintiff noted her objections and those objections were not well received by some of the members of the psychiatric committee. In fact, plaintiff ultimately received a written reprimand from her immediate supervisor because of some of her comments made at the committee meeting.

During the course of discovery, plaintiff deposed several of defendant's employees who allegedly attended the psychiatric review committee meeting. During the depositions, several questions were asked by plaintiff which related to what exactly transpired at the psychiatric committee with respect to the wellness programs and plaintiff's reactions thereto. Plaintiff further sought the minutes of the psychiatric committee insofar as they related to discussions of the wellness clinic (when plaintiff was alleged to have made unsupportive remarks) and any subsequent discussions by the committee of the circumstances involved in plaintiff's termination. Defendant objected to both the questions and the request for production asserting that the discussions had at the psychiatric committee are privileged in the sense that they are protected by Indiana's peer review statute and as such are not discoverable. As indicated, plaintiff seeks written answers to the questions propounded at the depositions which were ultimately certified for review by this court and certain minutes of the psychiatric review committee.

### Discussion

■ The thrust of plaintiff's suit in the court is based upon the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Though plaintiff originally also set forth a pendent state claim, it is clear that federal, and not state law, supplies the rule of decision with respect to her discovery request. *See, Robinson v. Magovern,* 83 F.R.D. 79 (W.D.Pa.,1979); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455 (N.D.Cal.,1978).

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for broad discovery: "[p]arties may obtain any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .". F.R.Civ.P. 26(b)(1). As for privilege, Rule 501 of the Federal Rules of Evidence provides in relevant part that "the privilege of a witness, person, government, state, or political subdivision thereof, shall be governed by the principles of the common law as they may be interpreted by the United States in light of reason and experience." F.R.Evid. 501.

■ Because Rule 501 of the Federal Rules of Evidence speaks in terms of "reason and experience," most courts, even in federal question cases, look to state law to see if a privilege "should be applied by analogy or as a matter of comity." *Ott v.*

*St. Luke Hospital of Campbell County,* 522 F.Supp. 706, 708 (E.D.Ky., 1981); *Robinson, supra; United States v. King,* 73 F.R.D. 103 (E.D.N.Y., 1976). Thus, where a "state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the fedeal rule," *Lora v. Board of Education,* 74 F.R.D. 565 (E.D. N.Y., 1977) because "comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *King, supra* at 105.

In the present matter, defendant invokes, as a privilege, Indiana's so-called "peer review" statute which provides in pertinent part:

> All proceedings of a peer review committee shall be confidential, and all communications to a peer review committee shall be privileged communications to the peer review committee. Neither the personnel of the peer review committee, nor any participant in a proceeding therein shall reveal any content of communication to or the record or determination of, a peer review committee outside the peer review committee.

I.C. 34–4–12.6–2(a). And further that:

> Except as otherwise provided in this chapter, no person who is in attendance at any such peer review committee proceeding shall be permitted or required to disclose any information acquired in connection with or in the course of such proceeding, or to disclose any opinion, recommendation, or evaluation of the committee or of any member thereof.

I.C. 34–4–12.6–2(c).

While it appears that no reported decisions of a federal court have addressed the Indiana statute, several federal courts have addressed so-called medical peer review statutes in other jurisdictions. Most enlightening in this regard is the decision in *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058 (7th Cir.1981). There, the United States Court of Appeals for the Seventh Circuit addressed an analogous Illinois statute which, like the Indiana statute under present consideration, provided that wrongful disclosure of discussions at a peer review meeting could result in criminal charges. 664 F.2d 1060 n. 2; I.C. 34–4–12.6–2(e).

As both parties recognize, *Shadur* is highly useful because it sets forth the framework for analysis. There, plaintiff filed a complaint alleging a group of competing physicians, in combination with others, used the committee organizational structure of the hospital to exclude plaintiff in an effort to destroy his practice in violation of federal and state anti-trust laws. Attempting to substantiate his claim, plaintiff sought discovery of certain documents which were admittedly protected by the Illinois peer review statute. After a U.S. Magistrate initially denied the discovery, Judge Shadur rejected the Magistrate's "Findings and Recommendations" and concluded that the state law should not be applied and ordered the hospital to submit the requested documents under a protective order.

The extraordinary request for Writ of Mandamus or Prohibition to the Seventh Circuit followed. On appeal, the Seventh Circuit affirmed stating:

> [I]n deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship where the policies sought to be furthered by the privilege and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case".

*Shadur, supra* at 1061–62 quoting *Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 43 (7th Cir.), *cert. denied,* 439 U.S. 820 (1977). Weighing the need for truth vis-a-vis the privilege asserted, the Seventh Circuit was of the view that the balance tipped in favor of plaintiff and thus in favor of disclosure. *Accord, Robinson v. Magovern, supra.*

In striking the balance, the *Shadur* court recognized other cases where the courts had determined that the balance tipped in defendant's favor and thus towards nondisclosure. Such cases, unlike the anti-trust case before the court in *Shadur*, dealt with medical malpractice actions. *See, Bredice v. Doctors Hospital*, 50 F.R.D. 249 (D.D.C.,1970), *aff'd*, 479 F.2d 920 (D.C.Cir.,1973); *see also, Feminist Women's Health Center, Inc., v. Mohammad, M.D.*, 586 F.2d 530 (5th Cir.1978).

Distinguishing the medical malpractice action, as in *Bredice*, from an anti-trust action, the *Shadur* court opined as follows:

> In this case ... [plaintiff] has alleged that the defendants have used the hospital committee apparatus discriminatorily to deny him staff privileges at the hospital in furtherance of an unlawful restraint of trade. To prove this allegation, [plaintiff] must present evidence that the other physicians with comparable or worse records than his were not denied staff privileges. Such evidence, if it exists, would likely be found in the hospital records of disciplinary proceedings against other doctors. To deny [plaintiff's] access to this information may very well prevent him from bringing this action altogether.

*Shadur, supra* at 1062. Thus, where "plaintiff's claim arises out of the disciplinary proceedings themselves and not some event or occurrence that exists independently of those proceedings" *id.*, the same may be discoverable while, conversely, the privilege will be recognized where the same will have "little impact upon plaintiff's ability to prove a meritorious claim" *id.*, as in a medical malpractice action.

This case, of course, is neither an antitrust suit nor a medical malpractice action. Nonetheless, it is clear, as all courts which have reviewed peer review statutes recognize, that a balance must be struck between the competing interests of plaintiff's needs for disclosure and defendant's need to protect confidentiality.

 Adopting the four factor test for recognition of a testimonial privilege recognized in cases such as *American Civil Liberties Union of Mississippi, Inc., v. Finch*, 638 F.2d 1336 (5th Cir.1981) and *In re Hampers*, 651 F.2d 19 (1st Cir.1981), other courts have applied those factors to a claimed privilege under peer review statutes. *See, Ott v. St. Luke Hospital of Campbell County*, 522 F.Supp. 706 (D.Ky. 1981). The four factors to be taken into consideration include:

1. The communication must originate in a confidence that they will not be disclosed.

2. This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.

3. The relation must be one which in the opinion of the community ought to be sedulously fostered.

4. The injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of the litigation.

*Finch, supra* at 1344; *Ott, supra* at 710. Applying those four factors to the facts of this case, this court is of the view that the balance must tip in favor of plaintiff and thus in favor of disclosure.

With respect to the first element that the communications must originate in a confidence that they will not be disclosed, it is far from clear that the discussions had at the psychiatric committee meeting relating to the wellness program originated in such an atmosphere. Indiana's peer review statute in defining the privilege states that a " 'peer review committee' means a committee having the responsibility of evaluation of qualifications of professional health care providers, or of patient care rendered by professional health care providers, or of the merits of a complaint against a professional health care provider that includes a determination or recommendation concerning the complaint." I.C. 34-4-12.6-1(c). Insofar as the psychiatric committee discussed the wellness program and its move to the south unit, it is not clear that the

discussion arose in the context of a "peer review committee." Nor is it clear that the element of confidentiality would be essential to the full and satisfactory maintenance of the relationship between the parties. There is no real showing that the psychiatric review committee's function would be substantially impaired by denial of the privilege in this case. The bulk of the information sought by plaintiff relates to the interaction between herself and other members of the committee. Thus it would not appear that confidentiality would be essential to the maintenance of the relation between the parties nor, in this respect, would it appear that the relationship between the parties is one which in the opinion of the community ought to be sedulously fostered.

Finally, it does not appear that the injury which would inure by disclosure of the communication would be greater than the benefit to be gained by the same. In fact, it is difficult to ascertain what harm would inure to the psychiatric committee if the certified questions are answered and the requested documents produced. Arguably, "[c]andid and conscientious evaluations of clinical practice is a *sine qua non* of adequate hospital care" *Bredice, supra* at 250, and thus as a general rule such discussions should remain confidential. But here it does not appear that the discussions in question go towards the adequacy or inadequacy of care but rather to plaintiff's participation in, and reaction to, discussions during the meeting. What benefit is to be derived from keeping such communication secret is difficult to discern aside from the general notion that as a principle, the hospital should make every effort to keep its committee meetings confidential.

Conversely, more is to be gained by disclosure. It could very well be that the answers and minutes will aid plaintiff in establishing her *prima facie* case, or, more probably, aid her in her rebuttal. That is, if plaintiff establishes a *prima facie* case, it would be incumbent upon defendant (leaving aside its contention that plaintiff voluntarily left) to establish that legitimate reasons existed for her termination. *See,*

*Cova v. Coca Cola Bottling of St. Louis, Inc.,* 574 F.2d 958 (8th Cir.1978) (regarding shifting burdens in A.D.E.A. case). Since plaintiff received a written reprimand as a result of her conduct during the meeting, it is not idle speculation to assume that such evidence might be useful in establishing that defendant had legitimate reasons for deciding to remove plaintiff from her position. That being the case, it seems clear that evidence as to what precisely went on at the committee meeting could be used by plaintiff to show that the purported reasons given by defendant are in fact pretextual. In this respect, this case is closer to those like *Shadur, supra,* in that plaintiff's claim, to a greater or lesser extent, arises out of the committee proceeding itself and not necessarily out of an event which existed independently of that proceeding. Construed in this light, the privilege asserted by defendant should not be recognized.

### Conclusion

Taken in balance, the court is of the view that the reasons underlying the peer review privilege are outweighed by plaintiff's need for discovery. Accordingly, plaintiff's motion to compel written answers to the certified deposition questions and plaintiff's request for production of the minutes will be GRANTED subject to the following conditions:

Plaintiff's Motion to Compel Discovery insofar as it seeks answers to questions certified during the depositions of David Ridderheim, Ronald Twomey, Eugene Faley, and James Kneen relating to events which occurred at the meeting of the psychiatric committee of Parkview Memorial Hospital is GRANTED. Defendant shall respond to those questions, in writing, within 15 days from the date of this order;

It is FURTHER ORDERED that defendant shall produce REDACTED copies of the September 1, 1982, minutes of the psychiatric committee only insofar as they relate to discussions of the wellness clinic along with REDACTED copies of the minutes of the psychiatric committee

66

from September 1, 1982, to January 1, 1983, insofar as they relate to discussions of the wellness clinic or to subsequent discussions by the committee of the circumstances and events surrounding plaintiff's termination;

It is further ordered that the discovery provided pursuant to this order is subject to a PROTECTIVE ORDER. Plaintiff shall utilize the information gained only for purposes of the instant litigation. Neither the minutes nor the answers to the certified questions need be filed with the court. Should it become necessary to file either the minutes or the answers to the certified questions as of record, the same shall be filed UNDER SEAL;

SO ORDERED.