**Thomas M. MATTICE, Plaintiff,**

v.

**MEMORIAL HOSPITAL OF SOUTH BEND, Defendant.**

No. 3:98–CV–303 RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 21, 2001.

Cynthia Rockwell, Haller and Colvin, Fort Wayne, IN, for Thomas M. Mattice.

Gregory W. Moore, John P. Ryan, II, Hall, Render, Killian, Heath and Lyman, Indianapolis, IN, for Memorial Hospital of South Bend, Inc.

Joseph L. Amaral, Hammerschmidt, Amaral and Jonas, R. Kent Rowe, III, Marie Anne Hendrie, Rowe and Rowe, South Bend, IN, for Michiana Anesthesia Care, PC, Neil Lesh, MD, and Dean Strycker, MD.

## ORDER

NUECHTERLEIN, United States Magistrate Judge.

Plaintiff Thomas M. Mattice, M.D. filed this action against Defendant Memorial Hospital of South Bend ("Memorial") alleging employment discrimination under the Americans with Disabilities Act ("ADA"). Memorial moved for a protective order regarding documents it believes are privileged under the Indiana Peer Review Act. Dr. Mattice responded to Memorial's motion and filed a motion to compel the documents Memorial claims fall under the peer review privilege. The Court concludes that Indiana's Peer Review Act does not preclude discovery of the documents in this case.

## I.  BACKGROUND

Dr. Mattice began working as an anesthesiologist at Memorial in July 1991. In 1995, he checked himself into a hospital for treatment of major depression and a panic attack. After a second medical leave of absence later that year, Dr. Mattice returned to work with no medical restrictions and an effective set of medications. In September 1996, Dr. Mattice served as an anesthesiologist for a patient who died in the operating room. Memorial's executive committee immediately suspended Dr. Mattice and began peer review proceedings relating to this and six other incidents. The peer review committee is a group of doctors who review troubling situations involving patient care.

After a hearing in January 1997, the peer review committee recommended that Memorial allow Dr. Mattice to return to work, but Memorial's executive committee refused to lift the suspension. Dr. Mattice pled his case to Memorial's board of trustees, who lifted his suspension and allowed him to return to work, but under a monitoring and testing regimen that Dr. Mattice alleges "made it impossible for Plaintiff to resume his duties at Memorial." Memorial also allegedly provided information relating to his mental health history to the National Practitioner Data Bank, thus harming his professional reputation and ability to work elsewhere.

Dr. Mattice filed his complaint on June 12, 1998. The complaint alleges that Memorial discriminated against him in violation of the ADA. It also alleges state law claims for intentional invasion of privacy, intentional infliction of emotional distress, and breach of an employment contract. The Court dismissed the complaint on January 19, 2000, but the Seventh Circuit reversed the dismissal and remanded the case to this Court.

Before the appeal, Memorial had filed a motion for protective order regarding documents requested by Dr. Mattice that are protected from disclosure by the Indiana Peer Review Act. Dr. Mattice filed a motion to compel the documents that he believed were not protected by the Peer Review Act. The Court ordered Memorial to submit the documents for *in camera* review. However, when the Court dismissed Dr. Mattice's case,

it also denied the pending discovery motions as moot.

The parties filed their Request for the Court to Consider Plaintiff's Second Motion to Compel [Doc. No. 89] and Renewed Motion for Protective Order [Doc. No. 90] after the Seventh Circuit reversed the dismissal of this case. The undersigned magistrate judge has the authority to decide these motions pursuant to 28 U.S.C. § 636(b)(1)(A) and the order of referral dated January 20, 2000.

## II. INDIANA'S PEER REVIEW STATUTE

Memorial argues that the peer review materials it submitted for the Court's review are protected from discovery by the Indiana Peer Review Act ("the Act"). The Act is comprised primarily of confidentiality and immunity provisions. It provides that "[a]ll proceedings of a peer review committee shall be confidential," and "[a]ll communications to a peer review committee shall be privileged communications." Ind.Code § 34–30–15–1. Further, "communications to, the records of, and the determination of the peer review committee" shall not be revealed "outside of the peer review committee." *Id.* In the context of judicial proceedings, the Act provides that "no records or determinations of or communications to a peer review committee shall be ... subject to subpoena or discovery or admissible in evidence in any judicial or administrative proceeding ... without prior waiver executed by the committee." Ind. Code § 34–30–15–9. The Act also grants broad immunities to participants in the peer review process and to the decisions made by the peer review committee.

■ The purpose of Indiana's medical peer review privilege is "to foster an effective review of medical care," *Mulder v. Vankersen,* 637 N.E.2d 1335, 1338 (Ind.Ct.App. 1994), and to "ensure Indiana citizens of the highest quality of medical care, while protecting them from incompetent, unqualified medical treatment." *Walton v. Jennings Community Hospital, Inc.,* 875 F.2d 1317, 1322 (7th Cir.1989).

The Act also has limits to its prohibitions of disclosure, including the following: "A pro-

fessional health care provider under investigation shall be permitted at any time to see any records accumulated by a peer review committee pertaining to the provider's personal practice." Ind.Code § 34–30–15–4(a). Also, "[i]nformation that is otherwise discoverable or admissible from original sources is not immune from discovery or use in any proceeding merely because it was presented during proceedings before a peer review committee." Ind.Code § 34–30–15–3(a). The Act also specifically waives immunity for actions that violate "any federal or state law relating to the civil rights of a person." Ind. Code § 34–30–15–20. Even if the Court were to find that the Act applied in this case, these provisions could easily mandate disclosure of at least some of the documents.

## III. FEDERAL RULE OF EVIDENCE 501 DOES NOT SHIELD PEER REVIEW MATERIALS FROM DISCOVERY

■ Federal Rule of Evidence 501 governs the applicability of privileges in federal courts. That rule states in part:

the privilege of a ... person ... shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person ... shall be determined in accordance with State law.

Dr. Mattice alleges a federal claim under the ADA and three state law claims. In similar circumstances, the Seventh Circuit has held that federal privilege law governs "notwithstanding the presence of a pendent state claim." *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). *Accord: Schafer v. Parkview Memorial Hospital,* 593 F.Supp. 61, 62 (N.D.Ind.1984) (Lee, J.). Consequently, federal law, and not state law, governs the privilege issues in this case.

■ Although federal law applies, federal courts should, as a matter of reason, experience, and comity, consider the law of the state in which the case arises, and recognize

that state's evidentiary privileges "where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hospital,* 664 F.2d at 1061 (citation omitted). *Accord: Schafer,* 593 F.Supp. at 62.

Deciding whether to recognize an evidentiary privilege "requires a balancing of competing policies." *EEOC v. University of Notre Dame Du Lac,* 715 F.2d 331, 335 (7th Cir.1983). *Accord: University of Pennsylvania v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). "First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Memorial Hospital,* 664 F.2d at 1061. "Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises." *Id.* "The court should weigh the need for truth against the importance of the relationship of policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Id.* at 1061–62 (internal quotation omitted).

Nearly all of the cases that have weighed the state-law medical peer review privilege against the interests advanced by the federal anti-discrimination laws have concluded that the privilege does not preclude discovery of peer review materials. *E.g., Virmani v. Novant Health Inc.,* 259 F.3d 284, 293 (4th Cir.2001) (declining to recognize privilege in action alleging race discrimination under 42 U.S.C. § 1985); *Marshall v. Spectrum Med. Group,* 198 F.R.D. 1, 5 (D.Me.2000) (declining to recognize Maine's peer review privilege in anesthesiologist's action under the ADA); *Holland v. Muscatine Gen. Hospital,* 971 F.Supp. 385, 390 (S.D.Iowa 1997) (declining to recognize privilege in Title VII action); *Johnson v. Nyack Hospital,* 169 F.R.D. 550, 561 (S.D.N.Y.1996) (holding that New York and New Jersey peer review statutes did not apply in federal suit alleging race discrimination); *Robertson v. Neuromedical Center,* 169 F.R.D. 80, 83–

84 (M.D.La.1996) (holding that state medical peer review privilege did not apply in an action alleging a violation of the ADA); *LeMasters v. Christ Hospital,* 791 F.Supp. 188, 191 (S.D.Ohio 1991) (declining to recognize privilege in case alleging sex discrimination and retaliation); *Schafer,* 593 F.Supp. at 65 (declining to recognize privilege in case brought under the Age Discrimination in Employment Act). The Court finds that the reasoning and experience presented in these cases is persuasive. The Court agrees with the conclusion of these cases that "the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a privilege for medical peer review materials." *Virmani,* 259 F.3d at 293.

In addition, many of these cases look to federal statutory law for guidance from Congress in this area. The Health Care Quality Improvement Act of 1986 ("HCQIA") provides qualified immunity for those who engage in the peer review process. 42 U.S.C. § 11111(a)(1). The HCQIA also requires hospitals and other health care facilities to report all disciplinary actions taken against physicians to a national clearinghouse. 42 U.S.C. §§ 11131–11133. The statute protects from disclosure the information reported to the national clearinghouse, but not the information gathered during the peer review process. 42 U.S.C. § 11137(b). All of the cases cited above that have addressed the HCQIA have reached the same conclusion. Congress, then, has specifically addressed the issues of confidentiality and protection of the medical peer review process, but it has chosen not to include a privilege for peer review materials. *University of Pennsylvania* warned against recognizing a privilege in just such a circumstance "where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *University of Pennsylvania,* 493 U.S. at 189, 110 S.Ct. 577. The HCQIA, then, is a clear congressional statement that no general medical peer review privilege exists in federal law.

Memorial relies on *Doe v. St. Joseph's Hospital of Fort Wayne,* 113 F.R.D. 677 (N.D.Ind.1987) (Sharp, J.), where the court

denied discovery of peer review materials to a plaintiff alleging claims under Title VII and 42 U.S.C. § 1981. Judge Sharp's reasoning in *Doe*, though, does not contradict the reasoning of the several other courts listed above. First, *Doe* never addressed the HCQIA or its impact on the federal law of privileges. Second, *Doe* recognized that "... the need for truth in cases which allege that the communications to, records of or determinations of the peer review committee illustrate discrimination outweighs the right to an absolute privilege." *Doe*, 113 F.R.D. at 680. *Doe* upheld the peer review privilege under the particular circumstances of that case because the plaintiff had failed to allege facts from which an inference of workplace discrimination could arise. *Id.*[1]

In this case, by contrast, Dr. Mattice argues that the peer review materials support his claim of disability discrimination. The peer review committee recommended that Memorial allow Dr. Mattice to return to work, but Memorial refused to lift the suspension. The peer review materials may aid Dr. Mattice to prove that he was qualified for the position of anesthesiologist or that Memorial discriminated against him because of his perceived disability. The peer review materials may also rebut Memorial's proffered legitimate reasons for the loss of his job. In other words, if Memorial claims that it acted not because of his disability, but instead because of Dr. Mattice's poor medical care, then Dr. Mattice will be entitled to introduce evidence of the peer review process to try and demonstrate that such reasons are pretextual. *Schafer*, 593 F.Supp. at 65 (discussing plaintiff's need of the peer review materials in support of her burden to show pretext). Whether or not Dr. Mattice will prevail in that effort is a matter for the jury to decide; this Court merely holds that under Federal Rule of Evidence 501 peer review documents are not privileged and are subject to discovery.

Although the reasons stated above are sufficient, standing alone, to warrant production of the peer review documents, the Court notes an additional reason in support of disclosure in this case. Dr. Mattice has already seen most, if not all, of the peer review documents. For example, Memorial asks the Court not to order production of the transcript of the peer review committee hearing, but Dr. Mattice and his counsel attended the peer review hearing, and listened to, in person, all of the testimony presented at that hearing. Mr. Mattice has already seen all of the exhibits used at the hearing, and likely has seen all, or at least most, of the other documents submitted for *in camera* review. The Indiana Peer Review Act requires peer review materials to be disclosed to physicians who are being investigated so that the physicians can prepare their defense at the peer review hearing. Ind.Code § 34–30–15–4(a). The Court understands that allowing Dr. Mattice to review the peer review materials in preparation for his defense at a peer review hearing is different than allowing him to disclose those materials in support of a federal law suit. Nonetheless, the fact that Dr. Mattice has already been privy to most, if not all, of the peer review materials is one factor weighing in favor of disclosure in this case. *Marshall*, 198 F.R.D. at 5 (requiring disclosure of peer review materials for "two decisive reasons," one of which was because the plaintiff doctor had already learned about some of the information contained in the peer review materials). It is not a necessary factor, for the Court would have ordered production of the documents regardless of whether Dr. Mattice had seen them previously, but it provides additional reason favoring disclosure in the facts and circumstances of this case.

Despite the Court's holding that the peer review documents are not privileged under federal law, the Court appreciates the confidentiality concerns raised by Memorial. The peer review documents should not be used for any purpose other than this litigation. Additionally, the patients discussed in the peer review materials also have privacy interests that must be protected. Finally, other privileges, such as the physician-patient privilege or the HCQIA's privilege for infor-

---

1. At least one other court has interpreted the holding in *Doe* in this way. *United States v. QHG of Indiana, Inc.*, 1998 WL 1756728, at *4 n. 4 (N.D.Ind. Oct.8, 1998) (Cosbey, Mag. J.), *aff'd*, 1999 WL 33243495 (N.D.Ind. Feb.26, 1999) (Lee, J.).

mation reported to the national clearinghouse, may need to be protected from disclosure or redacted altogether. Therefore, the Court directs the parties to meet and confer on a proposed protective order that will protect those privacy interests. In addition, the parties should also develop a procedure for redacting or withholding information that the parties agree is protected by privacy interests or a privilege other than the peer review privilege. If the parties cannot agree whether particular information is subject to discovery or is protected by privacy concerns or a privilege other than the peer review privilege, then the parties may submit the issue to the Court for an *in camera* review of the particular matter. After the Court has entered the protective order and all other remaining privacy and privilege concerns are resolved, the Court will order the production of the peer review documents.

## IV. CONCLUSION

For the foregoing reasons, the Court determines that Indiana's peer review privilege is not applicable in this case. Plaintiff's Request for the Court to Consider Plaintiff's Second Motion to Compel [Doc. No. 89] is **GRANTED**. Defendant's Renewed Motion for Protective Order [Doc. No. 90] is **DE-NIED**. However, the peer review documents identified in Memorial's privilege log shall not be disclosed until all of the following have occurred:

1. Counsel for the parties have submitted, and this Court has signed, a stipulated confidentiality/protective order addressing the peer review materials;

2. Counsel for the parties have agreed or the Court has ruled on necessary redactions to protect the privacy interests of the patients, physician-patient privilege, or to protect documents that are privileged for some reason other than the peer review privilege.

The Court anticipates the parties will be able to comply with this order by October 19, 2001, the date of the scheduling conference. If any issues remain, the parties should be prepared to discuss them at that time. Memorial should arrange to retrieve from the Court the documents that were submitted for *in camera* review as soon as possible.

**SO ORDERED.**