Filed 06/16/25

| | | |
|---|---|---|
| VERMONT SUPERIOR COURT |  | CIVIL DIVISION |
| Washington Unit | | Case No. 24-CV-00870 |
| 65 State Street | | |
| Montpelier VT 05602 | | |
| 802-828-2091 | | |
| www.vermontjudiciary.org | | |

---

Liam Gannon, MD v. Copley Hospital Inc.

---

## Opinion and Order on Motion (#3) to Compel

Plaintiff Dr. Liam Gannon was fired from his emergency room appointment at Defendant Copley Hospital Inc. ("Copley") for, according to Copley, no cause. He asserts several claims in this case based on his allegations that Copley, in fact, terminated his employment in retaliation for voicing objections to a plan to adopt a new electronic health records system for the emergency department, for complaining that the new emergency room director communicated with him in an unprofessional manner, and because he had complained that she had exhibited certain practices that could affect patient safety. The parties have arrived at a discovery impasse based on their different views of the statutory peer review privilege, 26 V.S.A. § 1443. Dr. Gannon has filed a motion to compel.

Dr. Gannon made several discovery requests in response to which Copley withheld extensive, responsive documents (all set out in a 56-page log) under a claim of peer review privilege. As presented, the dispute is not about this or that record. It is about the breadth of the peer review privilege or how it operates. Generally speaking, "[t]he obvious purpose of the statutory medical peer review privilege is to 'promote candor and confidentiality' in the peer review process and 'to foster aggressive critiquing of medical care by the provider's peers.'" *Pardo v. General Hosp. Corp.*, 841 N.E.2d 692, 700 (Mass.

2006) (citations omitted).  Dr. Gannon argues that the privilege does not apply at all to this kind of case (employment discrimination).  He further argues that if it can apply in an employment discrimination case, then it does not apply to all the records withheld by Copley because: (1) some are records of the wrong kind of committee (not peer review committees), and (2) some are records other than those *of* a peer review committee–even if the records were in the possession of a peer review committee.

Copley counters that the privilege applies no matter what kind of case is underway.  It further argues that the privilege extends to any sort of hospital committee so long as that committee was fulfilling a peer-review function as set forth in the hospital's bylaws.  The withheld records at issue now were classified at some point as subject to the statutory peer review privilege, presumably by one of five hospital committees.[1]  The Court makes the following determinations.

A. Whether The Privilege May Extend To An Employment Discrimination Case

The statute, in relevant part, provides:

> The proceedings, reports, and records of committees defined in section 1441 of this title . . . [Clause 1] shall be confidential and privileged, and [Clause 2] shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters that are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any findings, recommendations, evaluations, opinions, or other actions of such committees or any members thereof.  However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such action merely because they were presented during the proceedings of such committee, nor shall any person who testifies before such committee or who is a member of such committee

---

[1] The record is silent as to who specifically designated which records are privileged, when the designations were made, and in relation to what sort of peer review process the records arose.  At oral argument, counsel for Copley could shed no greater light on that issue.

be prevented from testifying as to matters within his or her knowledge, but such witness shall not be asked about his or her testimony before such committee or about opinions formed by him or her as a result of such committee hearings.

26 V.S.A. § 1443(a) (Clauses 1 and 2 as indicated by the Court).

Dr. Gannon focuses on Clause 2 and argues that it is intended to limit the scope of Clause 1 insofar as it describes the type of proceeding in which the privilege applies. This is not that type of proceeding, he asserts, because this case arises out of his purportedly no-cause termination rather than patient safety and peer review activity. He further cites *Mattice v. Memorial Hosp. of South Bend*, 203 F.R.D. 381, 385 (N.D. Ind. 2001) for the proposition that peer review statutes generally do not apply in the employment discrimination context.

Copley maintains that this case does arise out of peer review activity because Dr. Gannon's complaints all arise, ultimately, out of concerns about patient safety and care. More importantly, though, Copley focuses on Clause 1, which appears to command in more absolute terms that if the records reflect or are the "proceedings, reports, and records" of a § 1441 peer review committee, then they are privileged. Copley dismisses Clause 2 as merely providing one helpful example of a situation in which Clause 1 would apply.

Dr. Gannon's citation to *Mattice* is not persuasive. *Mattice* is a federal case in which the court considered whether to *adopt* a peer review privilege for federal law purposes under Fed. R. Evid. 501 in an Americans with Disabilities Act case. But there can be no question in this case that a privilege already has been adopted by the legislature in § 1443(a). *See Pardo v. General Hosp. Corp.*, 841 N.E.2d 692, 704 (Mass. 2006) ("Those [federal discrimination] cases are irrelevant because our Legislature has

created a statutory medical peer review privilege that we must effectuate."). Its scope—not whether it exists—is the issue here.

In the Court's view, each party's proffered interpretation of the statute arguably reads one or the other clause out of the statute. *See In re S. Burlington-Shelburne Highway Project*, 174 Vt. 604, 606 (2002) ("We presume that legislative language is inserted advisedly and not intended to create surplusage."). Thankfully, however, the Court is not faced with resolving that dilemma in this case. The matter can be resolved based on the application of Clause 2 to this action.

Clause 2, even assuming it is intended to operate as some kind of limitation on Clause 1, does not reveal that the privilege cannot apply in this case. Clause 2 refers to "any civil action against a provider of professional health services arising out of the matters that are subject to evaluation and review by such committee." There can be no doubt that this is "any civil action" and it is being litigated against "a provider of professional health services."

The Court is not persuaded by Dr. Gannon's argument that, nevertheless, this case cannot fairly be said to have arisen out of matters "subject to evaluation and review" by a peer review committee. In particular, Dr. Gannon's objections that preceded his termination plainly involved matters of patient safety, including the anticipated performance of the new health records system, the new medical director's charting or other recordkeeping practices, as well as communications between them that were allegedly taxing their professional relationship. That the parties dispute the employer's motivations for the termination decision does not change that fact. This part of the statute does not means-test every withheld record. It focuses on how the case arose. As

a result, this case arose out of issues, at least to some reasonable extent, properly subject to evaluation by a peer review committee.

B. <u>The Nature Of The Committee Versus The Nature Of The Records</u>

The Court is also persuaded that the privilege is intended to apply to the records of a peer review committee rather than the records of just any committees that are deemed (by someone) to consist substantively of peer review. Section 1441 defines peer review committee in relevant part: "As used in this subchapter, the term 'peer review committee' shall mean . . . a committee . . . of a hospital . . . that is formed to evaluate and improve the quality of health care rendered by providers of health services or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area." Peer review records are nowhere defined. The statutory scheme focuses, for privilege purposes, on the nature of committee rather than the nature of the records. This facilitates the goal of encouraging the candor of those who participate in the process. If the records at issue are those of a peer review committee, they are privileged according to the terms of § 1443(a).

Because the statute protects the records of peer review committees rather than peer review records regardless of the entity that produces them, the definition of peer review committee is critical to the appropriate application of the privilege. In short, a peer review committee is a committee that was formed for the purpose of undertaking peer review activity, the evaluation and improvement of the quality of health care rendered. It must be the mission of the committee to do formal peer review.

The withheld records in this case are from the Department of Surgery, the Department of Medicine, the Medical Staff Executive Committee, the Peer Review Committee, and the Clinical Quality Review Team. Dr. Gannon concedes that the Peer Review Committee and the Clinical Quality Review Team are formal peer review committees. He argues, however, that the Department of Surgery, the Department of Medicine, and the Medical Staff Executive Committee are not.

In response, Copley does not attempt to contend that the Department of Surgery, the Department of Medicine, and the Medical Staff Executive Committee are peer review committees as contemplated by statute. Instead, it cites its own bylaws in support of its argument to the effect that the nature of the committee is irrelevant. In that regard, Bylaws, Art. XII, § 2(A) (emphasis added) provides:

> Whenever a committee's functions include performance improvement activities, the evaluation or improvement of the quality of patient care, the determination of whether healthcare services were performed in compliance with applicable standards of care, the determination of whether the cost of care was considered reasonable, the determination of whether a healthcare provider's actions call into question such provider's fitness or ability to provide health care services, such committee shall, when performing such functions be deemed to be acting as a peer review committee; and the proceedings, records and reports relating to such functions shall be deemed to be subject to peer review confidentiality and non-discovery protections, whether or not a further statement to the same effect is contained in these bylaws or the committee's records. The Medical Staff Executive Committee, the joint conference committee, the utilization review committee, the peer review committee, the infection control committee, and the blood usage and surgical case review committee all perform peer review functions and are all deemed peer review-type committees whose proceedings, records and reports are deemed subject to peer review confidentiality and discovery protections.

In other words, it argues, whenever any committee does something in the nature of peer review, the peer review privilege applies. If that is an accurate understanding of the bylaws, they turn the statutory framework on its head. The statutory framework is

dependent on the nature of the committee, not the nature of the records. To the extent the bylaws attempt to bootstrap such records into being those "of a peer review committee" by fiat, they are inconsistent with the statute. The statute plainly demands rigid formality as to boundaries of peer review committees.

Generally, the statute extends the privilege to all the records "of" a peer review committee regardless of content, which is why it is important to distinguish committees as having been formed to conduct formal peer review or not. "Because the dividing line between peer review and normal business operations can be unclear, courts generally apply the peer review privilege only when the formalities of a peer review process are clearly apparent. For example, conversations between a department chief and nurses will not be protected from discovery if there were no apparent peer review formalities— even when the department chief views his job as 'provid[ing] good quality service . . . and coordinat[ing] services between departments' and characterizes the conversations as 'quality control.' Formalities such as designated committees and explicitly labeled peer-review reports act as a signal to medical employees, telling them when their opinions will be protected from discovery." *Robinson v. Springfield Hosp.*, No. 1:09-CV-75, 2010 WL 503096, at *2 (D.Vt. Feb. 5, 2010); *see also Prouty v. Southwestern Vermont Medical Center, Inc.,* No. 89-2-13 Bncv, 2013 WL 7346974, at *2 (Vt. Super. Ct. Oct. 30, 2013) ("[B]lanket assertions are insufficient to invoke the privilege.").

Generally, the "burden of establishing that a privilege applies in a particular case is on the party asserting it." *State v. Emerson*, 150 Vt. 128, 129 (1988); *see also Giusti v. Akron Gen. Med.* Ctr., 896 N.E.2d 769, 775 (Ohio Ct. App. 2008) ("The party claiming the [peer review] privilege has the burden of proving that the privilege applies to the

requested information."); *Magowan v. John Larkin, Inc.*, No. 562-6-17 Cncv, 2018 WL 8666300, at *3 (Vt. Super. Ct. June 20, 2018) ("Defendant bears the burden of showing that the seven documents it has chosen to withhold are 'proceedings, reports, [or] records of [a peer review committee.]'"); *see also Bansal v. Mount Carmel Health Systems, Inc.*, No. 09AP–351, 2009 WL 5062122, *5 (Ohio 2009) ("To prove the privilege, the health care entity must first establish the existence of a committee that meets the statutory definition of 'peer review committee' contained in [applicable law.]").

In this instance, Copley has come forward with nothing to establish that the Department of Surgery, the Department of Medicine, and the Medical Staff Executive Committee genuinely are peer review committees under 26 V.S.A. § 1441. It has relied solely on the fact that someone at some point designated each withheld record as subject to the privilege and placed a stamp on it. That is insufficient.[2]

The privilege does not extend to records of the Department of Surgery, the Department of Medicine, and the Medical Staff Executive Committee. Any such records withheld exclusively under a claim of peer review privilege must be produced.

C. <u>The Scope Of What May Be Properly Withheld</u>

Dr. Gannon concedes that the Peer Review Committee and the Clinical Quality Review Team are formal peer review committees subject to the privilege. He argues, however, that Copley has withheld the records of those committees in an overbroad manner.

---

[2] Permitting the alternative approach argued for by Copley would also pose difficulties in determining whether, for example, documents that were purportedly part of the Department of Surgery's peer review process would be confidential even if the Department were reviewing materials that were generated in that Department as an original matter. 26 V.S.A. § 1443(a)

24-CV-00870 Liam Gannon, MD v. Copley Hospital Inc.

Records in the possession of a peer review committee are not necessarily privileged. The statute draws a distinction between: (1) the "proceedings, reports, and records *of*" the peer review committee, which are privileged, and (2) "information, documents, or records otherwise available from *original sources*" other than the peer review committee, which are not privileged. 26 V.S.A. § 1443(a) (emphasis added). In other words, if the record was produced by a source other than the peer review committee, that "original source" material is not privileged. The only exception would be for material produced by an original source but exclusively for the use of the peer review committee. The Court agrees with Dr. Gannon that it appears that records have been improperly withheld under the peer review privilege that, in fact, are original source documents that should have been produced. These two types of records need to be treated separately for privilege purposes.

Conclusion

Dr. Gannon's motion to compel is granted. Within 45 days:

(a) Copley shall produce all records of the Department of Surgery, the Department of Medicine, and the Medical Staff Executive Committee that have been withheld solely under a claim of peer review privilege;

(b) Copley shall produce all original source records in the possession of the Peer Review Committee and the Clinical Quality Review Team, excluding any records produced by an original source for either committee's exclusive use that have been withheld solely under a claim of peer review privilege; and

(c) Copley shall revise its withheld document log accordingly.

Electronically signed on Monday, June 16, 2025, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge