WILLIAM D. MATVIUW, M.D., Plaintiff-Appellant, *v.* JEFFREY B. JOHNSON, M.D., Defendant-Appellee.—(ALEXIAN BROTHERS MEDICAL CENTER, Intervenor-Appellee.)

First District (3rd Division)   No. 78-1184

Opinion filed March 7, 1979.—Rehearing denied April 27, 1979.

Michael A. Reiter and Irving B. Levinson, both of Katten, Muchin, Gitles, Zavis, Pearl & Galler, of Chicago, for appellant.

Harry L. Kinser and Kenneth C. Robbins, both of McLaughlin, Kinser & Bryant, of Chicago, for appellee.

Thomas C. Shields and Peter B. Freeman, both of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for intervenor-appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Dr. William D. Matviuw, appeals from an order of the circuit court of Cook County dismissing his complaint for compensatory and punitive damages arising from certain allegedly defamatory remarks made by defendant, Dr. Jeffrey B. Johnson. The trial court found that defendant's remarks were absolutely privileged and were therefore

nonactionable as a matter of law. The Alexian Brothers Medical Center intervened in this action and urge that the action of the trial court be upheld. This court has given the Illinois Hospital Association leave to appear as *amicus curiae,* and it also seeks to have the dismissal of the complaint upheld.

In November 1976, both plaintiff and defendant were members of the department of obstetrics and gynecology of the Alexian Brothers Medical Center, a hospital located in Elk Grove Village, Illinois.

Plaintiff's complaint charged that on November 23, 1976, a special meeting of Alexian's executive committee was convened in reference to two letters written by plaintiff. Plaintiff addressed the committee and departed. The complaint further alleged that subsequently defendant addressed the committee and made several statements regarding plaintiff's professional capabilities. Defendant expressed an unwillingness to continue to work with plaintiff because of plaintiff's dishonest and unethical practices. Defendant also stated that the majority of plaintiff's colleagues had a very low opinion of the latter's abilities. Defendant advised that he had warned several people regarding plaintiff's shoddy practices on occasion and that one such practice had prompted plaintiff's dismissal from another hospital. As an example of plaintiff's alleged incompetence, defendant cited an instance where plaintiff's method of delivery resulted in serious injury to an infant. Defendant also stated that pediatricians' reports of "battered babies" prompted a departmental audit.

In his complaint, plaintiff further alleged that defendant made the statements with knowledge of their falsity or with reckless disregard of their truth or falsity. Plaintiff charged that defendant neither consulted hospital records nor made any investigation to determine the accuracy of his accusations and that defendant was prompted to make the statements out of a desire to injure plaintiff's medical practice and to benefit his own. Plaintiff alleged that as a result of defendant's defamatory remarks he was not reappointed to the Alexian staff, had lost several patients and had been unable to obtain new patients.

Defendant moved to dismiss the complaint pursuant to sections 45 and 48 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48.) Defendant relied upon sections 1, 2 and 3 of the Medical Studies Act (Ill. Rev. Stat. 1977, ch. 51, pars. 101, 102, 103), which provides:

> "§1. All information, interviews, reports, statements, memoran-
> da or other data of the Illinois Department of Public Health, Illi-
> nois State Medical Society, allied medical societies, or committees
> of accredited hospitals, including Patient Care Audit Committees,
> Medical Care Evaluation Committees, Utilization Review
> Committees, Credential Committees and Executive Committees,
> * * * used in the course of internal quality control or of medical

study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that the claim of confidentiality shall not be invoked to deny a physician access to or use of data upon which a decision regarding his staff privileges was based.

§2. Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence in any action of any kind in any court or before any tribunal, board, agency or person.

§3. The furnishing of such information in the course of a research project to the Illinois Department of Public Health, Illinois State Medical Society, allied medical societies or to in-hospital staff committees or their authorized representatives, shall not subject any person, hospital, sanitarium, nursing or rest home or any such agency to any action for damages or other relief."

After Alexian was granted leave to intervene, the trial court granted its motion to quash all pending discovery on the ground that the information sought was confidential by virtue of the above-quoted sections of the Medical Studies Act. On April 14, 1978, the trial court dismissed plaintiff's complaint on the ground that the remarks made by defendant to the committee were absolutely privileged.

Plaintiff contends that the trial court erred in holding that the Medical Studies Act creates an absolute privilege to defame. Plaintiff argues that the Act offers only a qualified privilege to statements made before the executive committee of a hospital. He maintains that such a privilege did not warrant dismissal of his complaint.

Appellees argue that the language of the Medical Studies Act, as well as its legislative purpose, supports a construction which accords an absolute privilege to statements made before Alexian's executive committee. They cite the public policy which is promoted by allowing staff members to speak freely on matters regarding the evaluation of their colleagues' performance and improvement of patient care. Appellees suggest that the purpose and effectiveness of hospital committees will be seriously undermined if those testifying cannot be certain that their testimony will not subject them to civil liability. Moreover, appellees maintain that an absolute privilege is necessary to avoid the situation in which a witness would be required to guess beforehand whether the statements will be protected.

■■ The issue of whether sections 1, 2, and 3 of the Medical Studies Act confer an absolute privilege upon statements made before an executive committee of a hospital is one of first impression in this State. We first note that since an absolute privilege completely forecloses a remedy in a civil

action, the class of absolute privileges has traditionally been very limited. (*Cook v. East Shore Newspapers, Inc.* (1945), 327 Ill. App. 559, 64 N.E.2d 751.) We must therefore look to the language and purpose of the Act to determine the legislative intent with reference to privilege.

Section 1 of the Act provides that all "information, interviews, reports, statements, memoranda or other data" of medical executive committees shall be strictly confidential and used only for the purposes enumerated therein. Section 1 also contains an exception permitting a physician to gain access to or use data upon which a decision regarding his staff privileges was based.

Plaintiff's complaint alleged that as a direct result of the statements made by defendant before the executive committee, plaintiff was not reappointed to Alexian's medical staff. Thus, plaintiff falls within the exception set forth in section 1 and was therefore properly permitted access to and use of the substance of defendant's statements before the committee.

Appellees contend that the phrase "use of" should be narrowly construed to permit use of the data by a physician to rebut charges made against him and to appeal from a committee decision through the hospital's internal appeal procedure and, ultimately, judicial review. Under this interpretation, no civil action would be within the permitted use of such information.

We perceive no such limitation in the language used in the statute. The phrase "use of data" is not qualified or limited in any manner. On the basis of statutory language, we find no bar to plaintiff's action for defamation. Furthermore, we cannot accept appellees' contention that the construction of section 1 urged by plaintiff will defeat the Act's purpose and the legislature's intent. We agree that, through the Medical Studies Act, the legislature intended to bolster the effectiveness of in-hospital peer group review committees. To this end, the Act provided for a general policy of confidentiality for information obtained by such committees to insure that those providing the information could speak freely. Nevertheless, an individual's interest in his personal and professional reputation must be recognized and protected. In *Troman v. Wood* (1975), 62 Ill. 2d 184, 340 N.E.2d 292, the court stated at page 195:

> "The freedom of speech provisions of both our former and present constitutions [citations] recognize the interest of the individual in the protection of his reputation, for they provide that the exercise of the right to speak freely shall not relieve the speaker from responsibility for his abuse of that right."

In-hospital peer group review committees have need of candid commentary in order to function effectively. It does not follow, however, that those testifying before such committees must be accorded an absolute privilege to defame. Defamatory statements, motivated by ill-

will or malice, have no place in a forum convened to determine the qualifications of an individual to continue in the practice of his profession. If anything, such statements serve to detour the committee from its proper channel of investigation. There is no useful purpose to be served by allowing one physician to defame another before a medical executive committee and prohibiting the defamed party from seeking a remedy. Section 1 of the Act does not expressly provide for an absolute privilege and our examination of the legislative history does not mandate a finding that an absolute privilege is what the legislature intended. We hold, therefore, that, on the basis of section 1, a qualified privilege is accorded to those testifying before the executive committee of a hospital.

■ Section 2 of the Act pertains to the admissibility as evidence of the data deemed confidential by virtue of section 1. Section 2 flatly prohibits the use of such data "in any action of any kind in any court or before any tribunal, board, agency or person." This provision does not constitute a bar to plaintiff's action. As noted above, the information which forms the basis of plaintiff's complaint falls within the exception from section 1's general rule of confidentiality. Therefore, the prohibition in section 2 relative to confidential information is inapplicable.

■■ Section 3 of the Act likewise does not support appellees' position. The key phrase in section 3 provides immunity from suit for those providing confidential information "in the course of a research project." Defendant, citing the dictionary definitions of "research" and "project," maintains that a meeting of a hospital's medical executive committee at which the qualifications of a physician are discussed falls within the generally accepted definition of a research project. We do not agree. An inquiry into an associate's level of performance is not a "research project." Such an interpretation of research project would render that phrase meaningless in the context of section 3 since virtually no inquiry would be excluded from that definition. It is presumed that the legislature did not intend words used in a statute to be mere surplusage. *County of Winnebago v. Industrial Com.* (1966), 34 Ill. 2d 332, 215 N.E.2d 258; *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582.) We believe a sensible interpretation of "research project" in the context of the statute requires exclusion of a meeting of a hospital executive committee convened to evaluate a staff member's performance.

■■ The conclusion is unavoidable that the privilege created by sections 1, 2, and 3 of the Medical Studies Act is qualified rather than absolute. Had the legislature intended to provide absolute immunity from defamation suits, it could have so specified. (See Ill. Rev. Stat. 1977, ch. 126, par. 21.) In the absence of express language in the Act, we decline to imply an absolute privilege to defame.

A qualified privilege is by no means inadequate to protect those who

offer a candid evaluation of a colleague's performance in response to a medical executive committee's inquiry. As long as the person testifying does so in good faith and with a reasonable belief as to the truth of his statements, the testimony is protected by the privilege, even though it may later be discovered that the statements were, in fact, false. (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 150 N.E.2d 202.) We believe a qualified privilege adequately protects those physicians who, motivated by a sense of duty, respond to a medical executive committee's inquiry regarding another staff member's level of performance. Those motivated to falsely accuse out of ill-will or malice would not and should not be protected.

■ We also reject appellees' contention that Alexian's executive committee is a quasi-judicial office and, therefore, defendant's statements were absolutely privileged. Cases cited by the *amicus curiae* involve proceedings conducted by public governmental bodies. (See *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709 (Cook County Board of Appeals); *Kimball v. Ryan* (1936), 283 Ill. App. 456 (Chicago Board of Election Commissioners); *Krumin v. Bruknes* (1930), 255 Ill. App. 503 (Naturalization Bureau of the Federal Department of Labor).) Such proceedings are readily distinguishable from hearings conducted by the executive committee of a hospital.

The case of *Goodley v. Sullivant* (1973), 32 Cal. App. 3d 619, 108 Cal. Rptr. 451, cited by appellees, is inapposite. That case, which held a hospital executive committee to be a quasi-judicial body, was decided under a California statute which accorded an absolute privilege to "any * * * official proceeding authorized by law." There is no such provision in Illinois. As we have noted, we will not imply an intent on the part of the legislature to create an absolute privilege in the absence of an express statutory directive.

■ Since the trial court concluded that plaintiff's complaint was barred by the defense of absolute privilege the case must be reversed and remanded. In light of our holding that sections 1, 2, and 3 of the Medical Studies Act create a qualified privilege, we believe plaintiff's complaint contains sufficient allegations of bad faith and malice to withstand the motion to dismiss the complaint.

For the reasons stated, the judgment of the circuit court of Cook County dismissing the complaint is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Judgment reversed and remanded.

SIMON, P. J., and RIZZI, J., concur.