MEMORIAL HOSPITAL FOR McHEN-RY COUNTY, Petitioner,

v.

The Honorable Milton I. SHADUR, United States District Judge, Respondent.

No. 80–2815.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 28, 1981.*

Decided Nov. 16, 1981.

---

* Although a motion requesting oral argument was filed by plaintiff John R. Tambone, M. D., the Court has concluded that the facts and legal arguments are adequately presented in the petition and responses thereto and that therefore oral argument would not significantly aid the decisional process. Accordingly, plaintiff's motion requesting argument is denied.

Richard G. French, French & Rogers, Chicago, Ill., for petitioner.

David L. Clark, Chicago, Ill., for respondent.

Before CUMMINGS, Chief Judge, and SPRECHER and CUDAHY, Circuit Judges.

PER CURIAM.

Petitioner Memorial Hospital for McHenry County, Illinois, seeks issuance of a writ of mandamus or, in the alternative, prohibition,[1] to compel a United States District Judge to vacate a discovery order directing it to turn over certain documents deemed relevant to a pending proceeding. For the reasons which follow, we deny the petition.

## I

The order at issue was entered in a civil antitrust action brought by John R. Tambone, M.D. The complaint charges a restraint of trade in violation of federal and state antitrust laws by a group of competing physicians. It alleges that these physicians, in combination with others, have used

---

1. The writs of mandamus and prohibition are both extraordinary remedies which have traditionally been used in federal courts to confine inferior courts to the lawful exercise of their jurisdiction or to compel them to exercise their authority when it is their duty to do so. *In re Halkin*, 598 F.2d 176, 179 (D.C.Cir.1979). They differ primarily in their focus. While mandamus is positive in the sense that it is used to compel certain actions, prohibition is negative in that it is used to prevent such actions. In many cases, such as this one, the relief sought by the petitioner may be stated either positively or negatively and, thus, either writ may be used. Despite this fact, we shall for convenience hereinafter refer to the instant petition as one for mandamus alone.

over a period of years and continue to use the committee apparatus and other organizational structure of Memorial Hospital, a private hospital located in Woodstock, Illinois, to exclude Dr. Tambone from its medical staff, thereby effectively destroying his practice.

Central to Mr. Tambone's claim is his allegation that a disciplinary proceeding against him before the Hospital's Board of Directors was in reality a sham intended only as a means of implementing the alleged restraint of trade. On that issue, he has sought discovery regarding defendant's treatment of other doctors in comparable disciplinary proceedings. Specifically, he requested production of all documents relating to proceedings instituted by the Hospital against physicians who had applied for or were granted admission to its medical staff. Proceedings of this kind are admittedly privileged under the Illinois Medical Studies Act, Ill.Rev.Stat. ch. 51, § 101 *et seq.* (1979) (amended 1981). In addition, section 5 of the Act classifies the unauthorized disclosure of information obtained in the course of such proceedings as a Class A misdemeanor.[2]

On the basis of this statute, the Hospital objected to Dr. Tambone's discovery request. Its objection was sustained by the United States Magistrate to whom the case had previously been referred. Dr. Tambone then filed objections to the magistrate's Findings and Recommendations with District Judge Shadur. He concluded that the state law privilege should not be applied and ordered the Hospital to submit an appropriate protective order under which the requested documents could be made available to Dr. Tambone. Following an unsuccessful motion for rehearing and a denial of leave to appeal pursuant to 28 U.S.C. § 1292(b), the Hospital instituted this action for extraordinary relief.

In its petition, the Hospital claims that Judge Shadur exceeded his authority by ordering it to violate the Illinois Medical Studies Act, note 2 *supra.* It argues that where a state has an important interest in maintaining the confidentiality of certain information and sees fit to protect that interest by subjecting the unauthorized disclosure of that material to criminal liability, considerations of federalism and comity require that federal judges sitting in that state give effect to the state's policy judgment. Moreover, because Judge Shadur refused to recognize Illinois' interest in the confidentiality of hospital disciplinary proceedings as expressed in the Medical Studies Act, the Hospital contends that it is now "on the horns of an insoluble dilemma" in that it must choose between disobeying a federal court order on the one hand, and committing an act regarded by Illinois as a Class A misdemeanor on the other. Which-

2. · At the time Dr. Tambone's requests to produce were served on the Hospital, the pertinent provisions of the Illinois Medical Studies Act read as follows:

§ 1. All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health, Illinois State Medical Society, allied medical societies, physician-owned inter-insurance exchanges and their agents, or committees of accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, but not the original medical records pertaining to the patient, used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.

§ 2. Such information, records, reports, statements, notes, memoranda, or other data shall not be admissible as evidence in any action of any kind in any court or before any tribunal, board, agency or person.

\* \* \* \* \* \*

§ 5. The disclosure of any information, records, reports, statements, notes, memoranda or other data obtained in any such medical study except that necessary for the purpose of the specific study is unlawful, and any person convicted of violating any of the provisions of this Act is guilty of a Class A misdemeanor.

ever choice it makes, the Hospital contends that it will suffer serious consequences. It claims that for this reason relief by mandamus is clearly appropriate.

## II

Discovery in civil actions brought in federal courts is governed by the Federal Rules of Civil Procedure. The standard for discovery under those rules is extremely broad. Rule 26(b)(1) provides: "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action...." (emphasis added.) Rule 501 of the Federal Rules of Evidence provides the framework for determining whether material sought in discovery is privileged. It reads:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

■ The principal claim in this case arises under the Sherman Act (15 U.S.C. § 1), a federal law. Because state law does not supply the rule of decision as to this claim, the district court was not required to apply state law in determining whether the material sought by Dr. Tambone is privileged.[3] Instead, the question of whether the privilege asserted by the Hospital should be recognized in this case is "governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

■ This does not mean, however, that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law. "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976). And where a "state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N.Y.1977).

■ In *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 542–3 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978), this Court set forth several principles to be used in making the determination required under Rule 501. First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that

---

**3.** Although the complaint states a pendent state claim to which the information sought would also be relevant, this fact does not require a different result. As the court stated in *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D.Cal.1978), it would be meaningless to hold the communication privileged for one set of claims and not the other. See also *Robinson v. Magovern*, 83 F.R.D. 79, 84 (W.D.Pa.1979), in which the court held under facts almost identical to those present here, that federal law controlled on the question of privilege in a federal antitrust action, notwithstanding the presence of a pendent state claim.

relationship in the factual setting of the case." *Ryan, supra,* at 543.

Applying these principles to the facts of this case, we first note that the need for full disclosure of relevant evidence to the trier of fact, while always substantial, *United States v. King,* 73 F.R.D. 103, 105 (E.D. N.Y.1976), is particularly so in this case. As previously indicated, the complaint charges that a group of physicians have conspired to deny Dr. Tambone hospital staff privileges and thereby destroy his practice so as to limit competition in the providing of physician services. If successful in proving this claim, Dr. Tambone will vindicate not only his own right to practice medicine in the Woodstock area, but also the strong public interest in open and fair competition which is embodied in the Sherman Act under which the case arises.

The policy behind the privilege the Hospital seeks to assert, on the other hand, is also substantial. The basic purpose of the Illinois Medical Studies Act is "to bolster the effectiveness of in-hospital peer group review committees." *Matviuw v. Johnson,* 70 Ill.App.3d 481, 486, 388 N.E.2d 795, 799 (1st Dist. 1979). The function of these committees is to oversee the medical care and treatment provided by the hospital staff and to make sure that steps are quickly taken to correct any deficiencies which may occur. By providing that information obtained by such committees would be kept confidential, the Illinois legislature intended to encourage individuals with relevant information to speak freely so that the committees could more easily perform their function. *Id.; Walker v. Alton Memorial Hospital Ass'n,* 91 Ill.App.3d 310, 314, 414 N.E.2d 850, 853 (5th Dist. 1980).

As one court has stated in upholding such a privilege in a medical malpractice action,

Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

The purpose of these staff meetings is the improvement, through self-analysis, of the efficiency of medical procedures and techniques. They are not part of current patient care but are in the nature of a retrospective review of the effectiveness of certain medical procedures. The value of these discussions and reviews in the education of the doctors who participate, and the medical students who sit in, is undeniable. This value would be destroyed if the meetings and the names of those participating were to be opened to the discovery process.

*Bredice v. Doctor's Hospital,* 50 F.R.D. 249, 250 (D.D.C.1970), *aff'd,* 156 U.S.App.D.C. 199, 479 F.2d 920 (1973).

This case differs from *Bredice v. Doctor's Hospital, supra,* however, in that it is not a medical malpractice action. To recognize hospital review or disciplinary proceedings as privileged in the context of a malpractice action will generally have little impact upon the plaintiff's ability to prove a meritorious claim. For the crucial issue in that type of case is not what occurred at the review proceeding, but whether the defendant was in fact negligent in his care and treatment of the plaintiff. As the court in *Bredice* went on to note, " 'what someone . . . at a subsequent date thought of these acts or omissions is not relevant to the case.' " *Id.* at 251, quoting *Richards v. Maine Central R.,* 21 F.R.D. 590, 592 (D.Me.1957). More importantly, the exclusion of that information will not prevent the plaintiff from otherwise establishing a valid claim.

The same cannot be said, however, in a case such as this where the plaintiff's claim arises out of the disciplinary proceedings themselves and not some event or occurrence that exists independently of those proceedings. In this case, for example, Dr.

Tambone has alleged that the defendants have used the Hospital committee apparatus discriminatorily to deny him staff privileges at the Hospital in furtherance of an unlawful restraint of trade. To prove this allegation, Dr. Tambone must present evidence that other physicians with comparable or worse records than his were not denied staff privileges.[4] Such evidence, if it exists, would likely be found in the Hospital's records of disciplinary proceedings against other doctors. To deny Dr. Tambone access to this information may very well prevent him from bringing his action altogether.[5]

In *Robinson v. Magovern*, 83 F.R.D. 79 (W.D.Pa.1979), the court refused to apply such a privilege under facts almost identical to those now before us. Although the court in that case recognized the powerful interest in the confidentiality of peer review proceedings, it concluded that the need for discovery of information going "to the heart of the issues in this case, i. e. why Robinson was denied staff privileges," required disclosure. *Id.* at 89. It found this particularly true in light of the potential that exists within the framework of peer review groups "for doctors to use them for anti-competitive purposes." *Id.* See also *Feminist Women's Health Center, Inc. v. Mohammad*, 586 F.2d 530 (5th Cir. 1978). (State law barring use of committee records and proceedings as evidence in civil actions would not be applied in action brought by abortion clinic alleging that doctors conspired to boycott clinic and to fix prices for abortions in the area.)

■ This same conclusion follows here. To recognize hospital disciplinary proceedings as privileged, regardless of the purpose for which disclosure is sought, would in effect grant such committees, their members and participants absolute immunity from prosecution for all statements made and actions taken in the context of such proceedings. Illinois itself has refused to extend its privilege this far. *See Matviuw v. Johnson, supra* (Medical Studies Act does not bar defamation suit by physician based on statements made in bad faith at disciplinary proceeding). We also decline to do so. The public interest in private enforcement of federal antitrust law in this context is simply too strong to permit the exclusion of relevant and possibly crucial evidence by application of the Hospital's privilege.[6]

■ As to the Hospital's claim that this conflict between state and federal law places him "on the horns of an insoluble dilemma," we view this dilemma as wholly illusory when considered in light of the Supremacy Clause of the United States Constitution. To the extent Illinois' Medical Studies Act could be construed to exclude evidence relevant to a claim based on federal law in an action brought in federal court, it is rendered void and of no effect by

---

4. Of course, it is not enough for Dr. Tambone to show that he was discriminated against. To prove his Sherman Act claim he must also demonstrate that this discriminatory denial of staff privileges was in furtherance of the defendants' unlawful conspiracy to restrain trade.

5. As Judge Shadur points out in his response to the Hospital's petition, the plaintiff's "failure to adduce such evidence of discriminatory exclusionary treatment was held fatal to a Sherman Act claim" in *Deesen v. PGA*, 358 F.2d 165 (9th Cir. 1966). (Response, p. 4.)

6. While not dispositive, it should also be noted that the cost of disclosure to the policy behind the Medical Studies Act is not substantial under the facts of this case. Judge Shadur has indicated that the limited disclosure required for discovery will be made under a protective order which he has invited the Hospital to draft. Such an order could provide for an *in*

camera review of the requested material by the trial court to determine if it is relevant to Dr. Tambone's claim. In *Kerr v. United States District Court*, 426 U.S. 394, 405, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976), the Supreme Court stated in denying a petition for mandamus under similar circumstances that this procedure

is a relatively costless and eminently worthwhile method to insure that the balance between the petitioners' claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck. Indeed, this court has long held the view that *in camera* review is a highly appropriate and useful means of dealing with claims of governmental privilege. *E. g., United States v. Nixon*, 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974); *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

that provision, and any state prosecution of the Hospital based on that law would be barred. *In re Grand Jury Proceedings*, 596 F.2d 630, 632 (4th Cir. 1979). Thus, the Hospital's compliance with the district court's discovery order will not subject it to criminal liability under state law.

For the foregoing reasons, the petition is denied.