**Spurgeon GREEN, M.D., Plaintiff,**

v.

**SILVER CROSS HOSPITAL, et al., Defendants.**

No. 83 C 5375.

United States District Court, N.D. Illinois, E.D.

Nov. 9, 1984.

James T. Bradley, Stephen G. Seliger, Chicago, for plaintiff.

Robert J. Baron, George J. Vosicky, Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., Joliet, Ill., Alan O. Amos, Collins, Amos & Uscian, Chicago, Ill., Richard T. Buck, McKeown, Fitzgerald, Zollner, Buck, Sangmeister, Hutchison, Joliet, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Spurgeon Green ("Green") has brought a 15-count Complaint against Silver Cross Hospital ("Silver Cross"), where Green was

formerly employed as a staff physician, and ten of Silver Cross's officers and staff physicians. Complaint Count I charges defendants discriminated against Green because he is black, in violation of 42 U.S.C. § 1981. Count II asserts defendants conspired to deprive Green of equal protection of the laws in violation of 42 U.S.C. § 1985(3). Counts III through XV are pendent state law claims.

This Court's December 7, 1983 opinion rejected defendants' Fed.R.Civ.P. ("Rule") 12(b)(6) motion to dismiss Green's federal claims advanced in Complaint Counts I and II. Now various of the individual doctor defendants have moved (1) for summary judgment on the pendent state law claims in Counts VIII through XIV and (2) to dismiss the pendent claim in Count XV. For the reasons stated in this memorandum opinion and order:

 1. Summary judgment is granted as to Counts VIII through XIV, which are dismissed with prejudice.

 2. Green is given leave to amend Count XV as proposed in his response to the motion to dismiss that count (subject however to the application to Count XV of the principles expressed in this opinion as to the other counts).

### Facts

Green complains of allegedly racially-motivated, invidiously discriminatory revocation of his staff privileges at Silver Cross. Complaint Counts VIII through XIV charge seven of the Silver Cross staff physicians with defamatory statements impugning Green's competence as a doctor. Count XV says Silver Cross and the individual defendants engaged in conduct interfering with Green's justified business expectations as a practitioner.

Though all the individual physicians named in Counts VIII through XIV filed what they label as motions for summary judgment, their supporting affidavits do not even address the truth or falsity of their statements the Complaint charges as false and defamatory. Instead they say only the statements were made as testimony at an April 14, 1983 hearing before Silver Cross's Credentials Committee, which met at that time to consider the prior suspension of Green's hospital privileges.

### Defendants' Summary Judgment Motions

 Defendants' motions for summary judgment were really ill-advised. Rule 56 is not designed for a motion addressing only one or more *issues* in a separate claim, as distinct from the claim itself. *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 558–59 (N.D.Ill.1984). Rather summary judgment is supposed to be a substitute for trial where no questions of credibility or other factual disputes pose "a genuine issue as to any material fact" (Rule 56(c)). 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2712, at 564–67 & 567 n. 6 (1983). To the same effect, see the Advisory Committee on Rules comment on the 1963 amendment to Rule 56(e):

> The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.

It is therefore the movant's obligation to support its motion by advancing *all* the relevant facts, without holding back evidence that would be presented at trial. *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665–66 (N.D. Ill.1983) (on motion for reconsideration), adopted and affirmed 736 F.2d 388, 393 (7th Cir.1984).

For those reasons, had this Court disagreed with defendants' position as to the Illinois Medical Studies Act (the "Act") dealt with hereafter, defendants might well have been foreclosed from disputing the falsity of their statements about Green. Of course they did not intend any such result, but fortunately this Court does not have to decide that question in light of its conclusion as to the scope of the Act. That misperception by defendants' counsel, and the matching errors by Green's counsel (see n. 3), have been just another illustration of a frequently-encountered phenome-

non—a fundamental misunderstanding of what summary judgment practice is really about.

■ This opinion turns to the issue on which defendants thus staked their all (though they did not mean to): the effect of the Act, Ill.Rev.Stat. ch. 110, ¶¶ 8–2101 and 8–2102: [1]

> § 8–2101. Information obtained. All information, interviews, reports, statements, memoranda or other data of ... committees of accredited hospitals or their medical staffs, including ... Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for ... granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.

> § 8–2102. Admissibility as evidence. Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person.

Although those provisions have been and are categorized as "evidentiary" (both in their former home in the "Evidence and Depositions" chapter of the Illinois statutes and now in the "Evidence" article of the Code), their language and their history con-

firm they were intended to and do have an important substantive impact.

"Privileged" is a term with more than one possible meaning. In the purely evidentiary sense it denotes a communication that cannot be inquired into because public policy encourages full and free interchange between the parties to that communication in light of their special relationship—attorney-client, husband-wife and so on. By contrast, in substantive terms (when we speak of "absolute privilege" or "conditional privilege") the word refers to an insulation from *liability* for like reasons. Though the two concepts may coexist, there is not a necessary one-to-one correlation between them.

Here the history of the statute and the case law applying it compel a decision for defendants. In the version of Act § 1 as amended in 1977, the word "privilege" did not appear at all and the "except" clause at the end of the statute was very different:

> except that the claim of confidentiality shall not be invoked to deny a physician access to or use of data upon which a decision regarding his staff privileges was based.

*Matviuw v. Johnson,* 70 Ill.App.3d 481, 26 Ill.Dec. 794, 388 N.E.2d 795 (1st Dist.1979) ("*Matviuw I*") dealt with a defamation claim wholly parallel to Green's in this case and held (1) the defamatory statements giving rise to the claim were within the just-quoted "staff privileges" exception of Act § 1 and (2) Act § 2's prohibition against admissibility into evidence did not extend to statements that thus fell within that exception and were hence nonconfidential. In reaching those conclusions the *Matviuw I* court specifically characterized its search as one for the legislative intent as to the

---

1. Before the recodification of chapter 110 (formerly the Civil Practice Act) into the Code of Civil Procedure, those sections were found at Ill.Rev.Stat. ch. 51, ¶¶ 101 and 102 (to avoid confusion in referring to the successive versions of the statute, this opinion will speak of them simply as "Act § 1" and "Act § 2"). Just a few years ago this Court held the Act's bar on admissibility of evidence was inapplicable to a *federally*-based claim (or, if viewed as applicable,

would be void under the Supremacy Clause), *Tambone v. Memorial Hospital for McHenry County,* 79 C 2012 (Aug. 21, 1980). Our Court of Appeals sustained that holding sub nom. *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061–64 (7th Cir.1981). But nothing in those decisions impairs the validity of the Act as it impacts *state* claims (such as defamation claims), which are at issue here.

"privilege" to be accorded such statements (70 Ill.App.3d at 486, 388 N.E.2d at 798).

Almost immediately the Illinois General Assembly responded with material amendments to the Act (doubtless reflecting the lobby that had first produced the doctor-protective legislation was still both alert and effective [2]). Later in 1979 the "except" clause in Act § 1 was changed to its current form, so that the only judicial proceeding within the exception (that is, as to which the claim of confidentiality would not bar access by the physician involved) was one to review the revocation of staff privileges itself. That of course carried the necessary implication that strict confidentiality *did* extend to another kind of judicial proceeding—such as the defamation actions in *Matviuw* and in this case. Then in 1981 any even arguable loophole in that respect was closed by insertion of the word "privileged" into Act § 1 and the words "nor discoverable" into Act § 2.

Those amendments were—on their face—plainly substantive in nature. And if any doubt could exist on that score, it would be dispelled by *Matviuw v. Johnson,* 111 Ill.App.3d 629, 67 Ill.Dec. 370, 444 N.E.2d 606 (1st Dist.1982) ("*Matviuw II* "). In holding the amendments could not be applied retroactively to override *Matviuw I,* the same Illinois Appellate court said (*id.* at 632, 67 Ill.Dec. at 372, 444 N.E.2d at 608, citations omitted):

> Statutes and amendatory acts are generally presumed to operate prospectively absent clear statutory language to the contrary.... One exception to this general rule allows retroactive application even absent such statutory language where the statute or amendment in question relates only to procedural matters.... This exception is inapplicable, however, when the operation of a procedural rule affects the assertion of a substantive right or destroys that right.... The amendments in question here do not contain language specifically requiring

retrospective application to pending cases. Although rules pertaining to discovery and the admissibility of evidence would generally be characterized as procedural, we find the exception to be inapplicable under the circumstances of the present case. Since plaintiff's cause of action is based primarily on the statements in question, application of the amendments to bar this discovery and admissibility would in effect prevent plaintiff from proceeding with this action and would take on substantive dimensions.

Nor is there any question of the effect of the 1979 and 1981 amendments. On that score *Matviuw II, id.* said simply and without qualification:

> We agree that the Act as amended, if applicable to the present case, would render privileged the statements in question.

Defendants here do not suffer from the infirmity of retroactivity that precluded application of the present version of Act §§ 1 and 2 to the plaintiff in *Matviuw II.* Defendants' statements of which Green complains were made *after* the effective date of both statutory amendments. Accordingly the Act makes the statements "privileged" in the substantive sense: They cannot be the subject of a defamation claim.

Green responds by invoking *Qasem v. Kozarek,* 716 F.2d 1172 (7th Cir.1983). But *Qasem* involved the construction of the Wisconsin Peer Review Statute, Wis.Stat. § 146.37 (1981–82), which specifically limited immunity from civil suit to persons "acting in good faith" in medical peer review proceedings (the statute is quoted at 716 F.2d 1176). Illinois' statute is not so restricted. It rather makes statements in such proceedings flatly "privileged" and "not ... admissible as evidence ... in any action of any kind in any court...." This Court cannot amend, under the guise of statutory construction, what the Illinois General Assembly has done with obvious deliberateness. Defendants are entitled to

---

**2.** This should not be taken in a pejorative sense. Neither this Court nor any other sits in judgment on legislative motivations (unless of

course those motivations bear on constitutionality).

summary judgment on each of Counts VIII through XIV.[3]

### Complaint Count XV

Drs. Trager, Choksi and Ajmere assert claimed defects in Count XV. Green seeks to cure the complained-of matters by offering an amended version of that count. Those defendants do not object, and this Court will grant leave to file the amendment.

 It should be observed however that to the extent the claim for tortious interference is sought to be grounded in statements wrapped in the mantle of the Act, the privilege and non-admissibility provisions of Act §§ 1 and 2 apply to the statements. After all, those statutory provisions are *not* limited to defamation actions—they extend to "any action of any kind in any court."

### Conclusion

There is no genuine issue of material fact as to Complaint Counts VIII through XIV, and the defendants named in those counts are entitled to a judgment as a matter of law. In accordance with Green's request Count XV may be amended (and to avoid confusion, it should continue to be numbered Count XV despite the now-disposed-of intervening counts).

Green has in the past sought to modify his pleadings by language included in memoranda (and not in formal Complaint amendments), so that no self-contained current version of the Complaint exists. Green is therefore ordered to file a new complaint (except for the exhibits, which may simply be incorporated by reference)

captioned the "Second Amended Complaint" on or before November 19, 1984. Then on or before November 29, 1984 defendants are ordered to answer or otherwise plead to any portions of the Second Amended Complaint to which they have not previously pleaded.

---

**3.** Green's counsel engages in his own casual disregard of Rule 56 by making unsupported assertions of fact in his responsive memorandum, even though Rule 56(e) clearly mandates any response purporting to show a genuine issue for trial must be presented by affidavit or otherwise admissible evidence. Even apart from that defect in the manner of presentation, however, Green's added argument would appear to present problems under the Act. Essentially he urges a waiver of confidentiality because other persons were at the Credentials Committee meeting. That however confuses the first sense of "privilege" discussed in the text—as to which communication outside the privileged classes may destroy the right to absolute confidentiality—with the second and substantive sense of "privilege" as meaning no *liability,* as to which the same result does not necessarily follow. It will be remembered Act § 2 makes the statements "not ... admissible as evidence ... in any action of any kind ..."—as unlimited a prohibition as can be imagined.