Robert D. TEASDALE, M.D.,
an individual, Plaintiff,

v.

MARIN GENERAL HOSPITAL,
et al., Defendants.

No. C 89–1879 SC.

United States District Court,
N.D. California.

Aug. 16, 1991.

Khourie, Crew, & Jaeger, David MacPherson, San Francisco, Cal., for plaintiff.

Anderson, Galloway & Lucchese, Walnut Creek, Cal., for defendants Ross Valley Medical Clinic, John C. Keohane M.D., Raymond Bonneau M.D., Michael Stock M.D., J. Carroll Krueger M.D., and Laurence R. Schechter M.D.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Jacquelyn J. Garman, San Francisco, Cal., for defendant Marin General Hospital.

David J. Miclean, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Redwood City, Cal., for defendant Edward N. DeMayo M.D.

Harold J. Truett III, O'Reilly & Collins, Menlo Park, Cal., for defendants Peter A. Barry M.D. and Donald Seymour M.D.

Hancock Rothert & Bunshoft, William J. Casey, Mary G. Leupold, San Francisco, Cal., for defendants Charles Secor, Robert Bruckman, Peter Barry, Edmund Jacobson, Barry Blum and Donald Seymour.

## ORDER COMPELLING DISCOVERY OF DEFENDANT PHYSICIANS' CREDENTIALS FILES

CONTI, District Judge.

## I. INTRODUCTION

Each of the four motions addressed in this order discusses the issue of whether the defendant hospitals must turn over to plaintiff the so-called "credentials files" of the individual defendant physicians.[1] The four instant motions—plaintiff's motions (a) for clarification of the court's May 13, 1991 order 138 F.R.D. 697 and (b) to compel defendant hospitals to produce the aforementioned materials, and two separate motions by the individual physician defendants for a protective order—all address the same question: Must defendant hospitals produce the materials in question?[2] Because the resolution of this question is dispositive of all four instant motions, the court herein treats the four as calling for a single decision.

## II. BACKGROUND

As the court has discussed in its numerous previous discovery orders in this action, the action arose primarily from the rescission of the surgical privileges and membership of plaintiff Robert D. Teasdale, M.D. ("plaintiff") on the staff of defendants Ross General Hospital ("Ross General" or "Ross") and Marin General Hospital ("Marin General" or "Marin") (collectively "defendant hospitals"). Beginning in 1981, plaintiff became associated and eventually gained entry into the medical staffs of, and obtained orthopedic and surgical privileges at, both hospitals. In 1983, first Ross General and then Marin General suspended plaintiff's surgical privileges.

These suspensions were followed by the permanent revocation of plaintiff's surgical privileges at Ross General in January, 1985, and the subsequent permanent revocation of plaintiff's surgical privileges at Marin General. Plaintiff was permanently removed from the medical staff of Ross General in August 1986, and later from the medical staff of Marin General.

Plaintiff alleges that, originating with the suspensions in 1983, defendant hospitals, along with a number of individual physicians[3], conspired to monopolize the southern Marin County market for orthopedists and eliminate the competition from plaintiff's practice, in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2. The two hospitals, along with the individual defendants, plaintiff contends, effectively controlled all in-patient orthopedic care in the area. In his complaint, as amended, plaintiff moves the court to order defendant

---

**1.** The court has previously required defendant hospitals to turn over to plaintiff peer review materials (for purposes of this order, the court will use the terms "peer review materials" and "credentials files" interchangeably to refer to all documents ordered produced in the "CONCLUSION" section of this order) of plaintiff himself and it is the understanding of the court that this material has, in fact, been turned over to plaintiff.

**2.** Defendants also move the court, should the court compel production of the requested materials, to order specific procedures for the discovery and dissemination of the requested materials.

**3.** These individual defendant physicians include Drs. Secor, Bruckman, Barry, Jacobson, Blum, Seymour, Stock, Krueger, Schechter, Keohane, and Bonneau, who together filed one motion for protective order, and Dr. DeMayo, who filed a separate motion for protective order. These physicians, including Dr. DeMayo, will be referred to herein collectively as the "individual defendants". "Defendants" will be used herein to refer to the individual and hospital defendants collectively.

Marin General to reinstate his staff surgical privileges,[4] to order defendants to refrain from further anticompetitive behavior towards him, and for damages.

To date, this litigation, ongoing for several years now, has consisted of one long and contentious discovery battle. Once again, in the instant motions, defendant hospitals, this time joined by the individual defendants, are attempting to deny plaintiff access to discovery which plaintiff claims is essential to his Sherman Act claim alleging conspiracy and anticompetitive behavior. Once again, the court must intervene to settle the matter.

So there is no mistake about the breadth or effect of the order issued today, the court notes at the outset that this order is dispositive of all claims raised in all sets of pleadings in the four instant motions. As discussed below, this order requires defendant hospitals to provide plaintiff, forthwith, with the requested discovery concerning the credentials files of the individual defendants, subject to the conditions ordered herein.

## III. DISCUSSION

Plaintiff argues that the documents in question—the confidential credentials files that include the information used in the peer review of the individual defendants—are essential to the effective prosecution of his antitrust claims against defendants. Defendants may be correct in asserting, in their pleadings, that it is unlikely that a "smoking gun" proving that any of the defendants made false claims about plaintiff in plaintiff's peer review proceedings, or proving conclusively that there was a conspiracy to restrain competition from plaintiff, will be found in the credentials files of the individual defendants. This is a far cry, however, from suggesting that

these files are not relevant, indeed potentially crucial, to plaintiff's antitrust claims.

As the Court of Appeals for the Seventh Circuit recognized in a similar case:

[Plaintiff] has alleged that the defendants have used the Hospital committee apparatus discriminatorily to deny him staff privileges at the Hospital in furtherance of an unlawful restraint of trade. To prove this allegation, [plaintiff] must present evidence that other physicians with comparable or worse records than his were not denied staff privileges. (footnote omitted) Such evidence, if it exists, would likely be found in the Hospital's records of disciplinary proceedings against other doctors. To deny [plaintiff] access to this information may very well prevent him from bringing his action altogether. (footnote omitted)

*Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1062–63 (7th Cir.1981). Clearly, evidence of the peer review treatment of other physicians by the hospitals in question is not only calculated to lead to relevant evidence, but is, in itself, relevant to plaintiff's antitrust claim.

Defendants, nonetheless, assert several grounds on which the court should deny plaintiff the requested documents. None of these present sufficient reason to block the relevant discovery.

Most easily dispatched is the claim of the individual defendants that California's "peer review privilege" operates to block the requested discovery. The court thoroughly discussed and rejected defendants' peer review privilege argument, vis-a-vis plaintiff's credentials file, in its May 13, 1991 order reversing Magistrate Judge Claudia Wilken's prior order on this issue. The privilege is no more applicable today than it was in May and no more prohibits discovery of the individual defendants' peer review materials than it does plaintiff Teasdale's.[5]

---

**4.** Defendant Ross has filed for bankruptcy and is no longer in business as a surgical hospital. Plaintiff contends, however, that, under his conspiracy to interfere with competition claims, discovery of peer review materials from each defendant is vital to his attempt to secure relevant evidence against every other defendant.

**5.** The court notes, as discussed more fully below, that it does not intend to tolerate the relitigation of each discovery issue—particularly one where, as with the peer review issue, the question has already been litigated twice—via the device of various defendants making the same claims at different times during the litigation.

All defendants assert a privacy right on behalf of the individual defendants, based on the United States and California Constitutions which, they argue, outweighs any discovery interest plaintiff may have in the requested documents, as well as any public policy interests in providing plaintiff with the requested discovery. Once again, defendants' argument is easily disposed of.

First and foremost, the court is completely satisfied that Magistrate Judge Wilken, in her order of December 3, 1990, intended to reject precisely the privacy argument urged on the court in defendants' instant motions. In partially granting plaintiff's motion to compel production of documents, Magistrate Judge Wilken ordered defendant Ross to produce documents requested in paragraphs 32 through 34 of plaintiff's first request for production of documents to Ross, which consisted of the individual defendants' personnel files and documents relating to the hospital's review of surgical privileges or medical staff membership and to any improper or inadequate medical performance on the part of the individual defendants, with the exception of those protected by peer review privilege.[6]

The documents sought in these particular numbered requests are precisely those[7] which are the subject of the instant motions and defendant Ross, in its opposition to plaintiff's motion to compel before Magistrate Judge Wilken, made the same privacy arguments that all defendants assert today. In compelling production, save for those documents protected by peer review privilege, Magistrate Judge Wilken rejected those privacy arguments *more than eight months ago*. No defendant sought reconsideration of that order, neither in December 1990, nor at any time to date.

The court cautions defendants not to interpret its reversal of Magistrate Judge Wilken's peer review privilege decision as a wholesale invitation to attempt to relitigate every discovery issue before this court.

The court simply will not allow a disguised motion to reconsider, such as that contained in defendants' instant pleadings, more than eight months after the magistrate's initial decision. The time for defendants to seek review of Magistrate Judge Wilken's determination on the privacy issue has long since passed.

Moreover, Magistrate Judge Wilken was correct in rejecting defendants' privacy argument. As the United States Supreme Court recently discussed in an analogous context, that of discrimination in university tenure decisions:

> [C]onfidential material pertaining to other candidates for tenure in a similar time frame may demonstrate that persons with lesser qualifications were granted tenure or that some pattern of discrimination appears ... [T]he peer review material itself must be investigated to determine whether the evaluations are based in discrimination and whether they are reflected in the tenure decision.

*University of Pennsylvania v. EEOC*, 493 U.S. 182, 193, 110 S.Ct. 577, 584, 107 L.Ed.2d 571, 585 (1990) (refusing to adopt peer review privilege for university tenure review materials).

Likewise, in the antitrust context relevant here, the evidence plaintiff Teasdale needs to attempt to prove his anticompetitive conspiracy claim, if it is to appear at all, may well appear in the credentials files of the individual defendants. Indeed, in the absence of the almost always elusive "smoking gun", the decisions of the peer review committee with regard to other physicians alleged to be a part of the conspiracy could conceivably be among the most important evidence in the case.

As to the asserted privacy interests, the court is not persuaded that they outweigh plaintiff's interest in the discovery, which may well go to the heart of plaintiff's case, the important public interest in antitrust enforcement, and the vital public interest in

---

6. Magistrate Judge Wilken initially held that the peer review privilege applied to some of these documents and prevented their discovery. The court later reversed this holding.

7. Although the instant motions are directed to discovery requests against both Ross and Marin, the identical types of documents were sought in the relevant paragraphs of requests against both hospital defendants.

the discovery of all probative evidence. *See, e.g., University of Pennsylvania,* 493 U.S. at 189–90, 110 S.Ct. at 582, 107 L.Ed.2d at 582, on the importance of the discovery of probative evidence. Moreover, as parties to the instant litigation, these particular defendants must reasonably anticipate more investigation of their professional and even personal matters than a non-party to the litigation might. Thus, the court is utterly unpersuaded by defendants' arguments that plaintiff should be disallowed discovery of the credentials files of the individual defendants.

Furthermore, as suggested above, the court is troubled by: (1) the attempt by the individual defendants to dredge up once again the already decided issue of peer review privilege; and (2) the attempt of all defendants, at this late date, to bypass Magistrate Judge Wilken's rejection of the privacy argument which they failed earlier to challenge in an appropriate manner. The court reminds all parties that it is holding in abeyance until time of trial all motions for sanctions and that it will consider carefully all discovery behavior in its ultimate determination of any appropriate sanctions.

Finally, although the court herein compels defendant hospitals to produce the requested documents, the court is not unaware of the sensitive nature of some of the information potentially contained in those documents. Thus, the court will attach a number of conditions to the compelled discovery, as noted in the "CONCLUSION" section of this order. These conditions shall be followed with the utmost care and any failure to abide by them will be treated very seriously by the court.

## III. CONCLUSION

In accordance with the foregoing, it is hereby ORDERED that:

(1) Plaintiff's motion to compel production of documents be, and hereby is, GRANTED consistent with the conditions specified in this order;

(2) Defendant Marin General Hospital be, and hereby is, COMPELLED to produce forthwith any and all documents in response to Request Nos. 22 through 24 of plaintiff's September 10, 1990 subpoena to that defendant's records custodian;

(3) Defendant Ross General Hospital be, and hereby is, COMPELLED to produce forthwith any and all documents responsive to plaintiff's Request Nos. 32 through 34 of plaintiff's First Request for Production of Documents to that defendant;

(4) Defendants' motions for a protective order with regard to the requested documents be, and hereby is, DENIED, except to the extent that defendants move the court to prescribe certain conditions, as delineated below, as to the use of the produced materials; and

(5) The following conditions shall be followed by all parties with regard to documents produced pursuant to this order:

(A) Any names of patients treated by any of the individual defendant physicians, or any other physicians, referenced in the produced documents shall be redacted and assigned numbers (i.e., "patient no. 1", "patient no. 2", etc.) to insure the patients' privacy;

(B) Should Dr. Teasdale, or his attorneys or consultants, nonetheless know or discover the name of a particular patient referenced in disclosed materials, no contact whatsoever shall be made with any such patient absent an order of this court authorizing such contact;

(C) There shall be no dissemination of any information disclosed pursuant to this order beyond the parties, their attorneys, employees or agents of those attorneys reasonably necessary to prepare the case for trial, and any expert consultants retained by the parties;

(D) All records disclosed shall be used for no purpose other than for the instant litigation;

(E) All parties must keep a record of all copies made of any documents disclosed subject to this order; and at the conclusion of this litigation, all documents provided pursuant to this order, along with any and

all copies of same made during the course of this litigation, must be returned to the custody and control of the respective hospitals from which they were produced;

(F) All materials produced pursuant to this order, as well as all copies thereof, shall be conspicuously marked at the top of each page in red ink "Confidential—Subject to Protective Order;" and

(G) Any documents subject to this order which are filed with the court for any reason shall be filed under seal.

IT IS SO ORDERED.