Carolyn FREEMAN, Individually and as Special Administrator of the Estate of Meddie Freeman, deceased, Cedric Freeman, Diane Devita, Lynette Freeman, Meddie Freeman, Jr., Eric Freeman, and Nicole Freeman, Plaintiffs,

v.

J.W. FAIRMAN, Jr., in his Official Capacity as Executive Director, Cook County Department of Corrections, Cook County, Illinois, and Holmes, #201 and BOYLE, #640, Defendants.

No. 94 C 7730.

United States District Court,
N.D. Illinois,
Eastern Division.

March 4, 1996.

Lesley Ann Redman, Kenneth N. Flaxman, P.C., Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiffs.

Terry L. McDonald, Michael David Jacobs, Cook County State's Attorney, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case arises out of the death of Meddie Freeman while in the custody of the Cook County Department of Corrections ("CCDOC"). Following our recent order granting partial dismissal of the plaintiffs' claims, the action now includes a federal civil rights claim alleging Fourth Amendment violations by defendants Holmes and Boyle in seizing and reincarcerating Freeman, and state common law wrongful death and loss of society claims against the CCDOC for breaching the jailer's duty of care by providing improper medical care to Freeman. Before the order was issued, the plaintiffs moved to compel the production pursuant to subpoena [1] of a Morbidity and Mortality Conference report ("Report") regarding Freeman's death. That motion to compel is the subject of this Order.

■ The defendants have resisted producing the Report on the grounds that it is protected by a privilege established by the Illinois Medical Studies Act. That Act states in pertinent part:

> All information, interviews, reports, statements, memoranda or other data of ... committees of ... hospitals or their medical staffs ... used in the course of internal quality control ... for the purpose of reducing morbidity or mortality or for improving patient care, shall be privileged, strictly confidential and shall only be used for ... the evaluation and improvement of quality care....

735 ILCS § 5/8–2102 (1995).

The plaintiffs do not contest that the Act is applicable to the Report, but contend that a federal court need not (and here, should not) apply state privilege law where jurisdiction is premised on a federal question or claim.

---

1. The motion to compel was originally brought against defendant Cook County, which was dismissed from this suit via our Order dated February 15, 1996. Cook County has now moved to quash the subpoena duces tecum on the grounds discussed herein.

In support, the plaintiffs cite to *University of Pennsylvania v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), in which the Supreme Court refused to recognize a state privilege governing records relating to peer review at a university, in a federal Title VII action challenging the failure to grant tenure. The Court held that, as it was the very peer review process itself that was at issue, the records were relevant and should be produced. Noting that evidentiary privileges should be narrowly construed because they block the discovery of probative evidence, and that Congress envisioned the production of such evidence in enacting Title VII, the Court found that it was not obligated to apply the state privilege in a federal action.

■ Our own appeals court has applied this rule to consider the validity of the very privilege in question here, the Illinois Medical Studies Act, in *Memorial Hospital v. Shadur*, 664 F.2d 1058 (7th Cir.1981). The Seventh Circuit first noted that, where the "principal claim" in the case is a federal claim, "state law does not supply the rule of decision," and thus a federal court has discretion regarding whether to apply the state law of privilege. *Id.* at 1061. The court then went on to analyze whether, in that case, the Act should apply. As the federal claim at issue there, a private anti-trust claim alleging restraint of trade based on a hospital's denial of staff privileges to a physician, directly challenged the peer review process of the hospital, the peer review records sought were highly relevant and the privilege should not be applied to prevent production. *Id.* at 1063. The court noted that Illinois courts also had held that the Act did not protect peer review records when the claim centered on the actual process of peer review. *See id.* (citing *Matviuw v. Johnson*, 70 Ill.App.3d 481, 26 Ill.Dec. 794, 388 N.E.2d 795 (1st Dist.1979) (declining to apply the Medical Studies Act privilege in a defamation action stemming from a peer review group's activities)).

2. We have retained supplemental jurisdiction over these claims in the interests of judicial econ-

Unfortunately for the plaintiffs' argument, a different issue is presented here. Unlike the situations in *University of Pennsylvania* and *Memorial Hospital*, here there is no federal claim to which the records sought would be relevant, as the plaintiffs' Eighth Amendment claims against the CCDOC have been dismissed. The only remaining federal claim in the case is a Fourth Amendment wrongful seizure claim against separate defendants, which has nothing to do with the Report sought in this motion. Both of the cited cases explicitly rely on the fact that the evidence for which the privilege was claimed was directly relevant to the subject matter of the federal claim. Neither of these cases holds that the presence of a federal claim relating to an entirely separate matter enables a federal court to disregard state privilege law.

■ The only remaining claims to which the Report may be relevant are state law claims.[2] Rule 501 of the Federal Rules of Evidence governs the application of privileges to prevent discovery in a federal action. *Memorial Hospital*, 664 F.2d at 1061. Rule 501 provides that "in civil actions and proceedings, with respect to an element or a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." FED.R.EVID. 501. In plain terms, state privilege laws apply to state claims. Accordingly, we must apply the Illinois Medical Studies Act in this case, where the only claims to which the Report may be relevant are state claims. That Act protects the Report at issue from being produced in this suit.

■ Even if we were to read *University of Pennsylvania* and *Memorial Hospital* to permit us to disregard state privilege law where an unrelated federal claim is present, the determination of whether to compel production in these circumstances would still be a matter within this Court's discretion. *Memorial Hospital*, 664 F.2d at 1061.

omy.

[I]n deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should 'weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.'

*Id.* at 1062 (quoting *Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 543 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978)). Here, the interest sought to be protected by the Act is encouraging providers of medical care to scrutinize the care provided as a means of improving that care. *See Roach v. Springfield Clinic,* 157 Ill.2d 29, 40, 191 Ill.Dec. 1, 6, 623 N.E.2d 246, 251 (1993) (the Act's purpose is "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care.").

In balancing this interest against the interests of the plaintiffs and society in disclosure of the Report, we find that the balance tips in favor of recognizing the privilege in this case. The policy interests behind the Act are substantial: "Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations." *Memorial Hospital,* 664 F.2d at 1062.

The Court's balancing determination here is explicitly based on this Court's *in camera* review of the disputed Report, which revealed that the document was squarely within the purview of the Act and was of marginal probativeness to the issues presented by this case. In view of this finding and the fact that the plaintiffs have ample other sources of information that are not subject to the Act regarding the treatment provided to Freeman, this Court concludes that the policy interest is substantial while the interest in disclosure is slight.

For the foregoing reasons, the plaintiffs' motion to compel [18–1] is denied. The motion to quash the subpoena is therefore denied as moot.